### ROYCE & PULLING v. GEORGE H. TYLER ET AL.

1. ACTION BY CREDITOR OF AN INSOLVENT CORPORATION AGAINST STOCKHOLDERS TO ENFORCE THEIR STOCK SUBSCRIPTIONS.

In a suit by a creditor of an insolvent corporation against the stockholders, to enforce their stock subscriptions, and also their statutory liability, where the stock subscription book shows that the subscriptions were made subsequent to the filing of the articles of incorporation, such stockholders will not be permitted to show that such subscriptions were made prior to the filing of the articles of incorporation.

2. CANCELLATION OF STOCK SUBSCRIPTION, EFFECT.

In such a suit proof that certain of the subscribers to stock under an arrangement with one of the promoters of the enterprise, drew up and signed a cancellation of their own subscriptions, does not relieve such stock subscribers from liability to the creditors of the corporation.

APPEAL from the Court of Common Pleas of Franklin county.

STEWART, J.

This is a proceeding against the stockholders of an insolvent corporation, known as the Columbus Times Company, to enforce the collection of the balance due upon the subscription for stock, and also their statutory liability to the creditors of the corporation. The petition avers that the plaintiffs have a judgment against the corporation for $629, and sets forth the names of thirty-seven defendants who were stockholders in the corporation, representing all the stock in the corporation, and whom it seeks to hold. Upon the hearing in the court below, of the defendants, Hawley J. Wylie, O. P. Chaney, Joseph H. Outhwaite, W. J. Clarke, John T. Gale, George Beck, DeWitt C. Jones, H. Cashatt, George S. Peters, E. Kiesewetter and F. M. Senter were found not to be stockholders, and the petition of plaintiffs and the cross-petition of the other creditors of the corporation and J. H. Collins, a creditor and stockholder, were dismissed, and from that decree they appealed to this court. To so much of the decree as found the other defendants stockholders, such defendants gave notice of their intention to appeal, and A. B. Coit, John J. Joyce, Samuel Thompson, E. L. Hinman, Henry A. Reinhard, L. Heinmiller, P. W. Corzelius, John M. Pugh, R. B. Montgomery, J. P. Lunn, and Joseph M. Briggs perfected their several appeals. So that we have before this court twenty-two only of the defendants sought to be held as stockholders, who are resisting the claims of the creditors.

Since this appeal was perfected the plaintiffs have filed an amended petition, setting up that the judgment obtained by them as set forth in their petition had been set aside upon motion of certain of the defendants, but that subsequently, in another suit in which they and the Columbus Times Co. were parties, a judgment was rendered in their favor for $545, which is wholly unpaid; and then repeats the allegations of the petition as to the insolvency of the corporation, the amount of its debts, setting forth some of the creditors, and averring the necessity for requiring the subscribers to the capital stock to pay in their stock subscription and also their statutory liability, and prays judgment accordingly.

The administrator of Harvey Cashatt, one of the defendants, has filed a general denial to the petition and to all answers and cross-petitions. George Beck, for himself and the other defendants (except M. A. Daughtery and J. H. Collins), who are claimed to be held as stockholders, has filed an answer setting up the setting aside of the original judgment, just as plaintiffs in their amended

petition have done.  The answer further denies that the Columbus Times Co. "is or ever was a corporation."  It denies that after the certificate of incorporation was filed, books of subscription were opened, and the entire capital stock was subscribed by the persons and in the amounts named in the petition. Alleges that the president of the corporation refuses to defend the suit, and that therefore they are compelled to do so.  It avers that Thompson & Tyler, the largest stockholders in the corporation, were the owners of a newspaper and job printing establishment, and that they agreed to turn over all that property to the new corporation, and take stock therein, provided the corporation would pay the debts of Thompson & Tyler, amounting to about $12,000; that their subscriptions to the agreement and to the capital stock, both of which were averred to have been made before the articles of incorporation were filed, were obtained by false and fraudulent representations of Thompson as to the value of the property, and as to the indebtedness of Thompson & Tyler.  That as soon as an opportunity was afforded, nine of the subscribers withdrew from the corporation, by the consent of Thompson & Tyler, and cancelled their obligations upon their subscriptions: and makes a general denial of all other allegations in the petition.  The plaintiffs and other creditors reply to this answer denying all the allegations thereof, and aver that if any false or fraudulent statements were made to induce subscriptions, they were not parties to it; neither were they parties to, nor did they consent to any arrangement by which certain of the subscribers to the capital stock withdrew their subscriptions and their liability thereon.

The evidence taken under these issues shows, that on the 19th day of March, 1883, the following agreement was drawn up:

"We, the undersigned, agree to take stock in the Columbus Times Printing & Publishing Company, to be organized and incorporated as a joint stock company under the laws of Ohio, upon the following basis:  The entire stock of the company is to be $21,000, of which Geo. H. Tyler is to represent $6,000 of paid-up stock, and John G. Thompson to represent $6,000 of stock, $3,000 paid and $3,000 unpaid.  The joint company to assume the entire indebtedness upon the office which is not to exceed $12,000.  The unpaid capital herein subscribed to be assessed in 10 per cent. installments as may be needed until paid, or until such time as payments may not be necessary.·  This agreement to be void unless the full amount of stock herein named shall be subscribed to-wit, $9,000 in addition to the amount set apart for George H. Tyler and John G. Thompson."

Concluding as follows:

"In witness whereof we set opposite our names the amount of stock we agree to take respectively.  Columbus, O., March 19, 1883."

Then follows the names of sundry persons with various amounts, aggregating $9,000, set opposite their names, including the names of the defendants here, signed by themselves, for various amounts.  On the margin of the agreement appears the following:

"We hereby agree to turn over to the joint stock company herein indicated the property known as The Times newspaper, as soon as $9,000 is subscribed as herein specified.    (Signed)                     JNO. G. THOMPSOON,
                                                          "GEO. H. TYLER."

On the 29th day of March, 1883, at a meeting held for the purpose of incorporating the company, Judge Gilmore drew up the incorporation papers, which were signed by twelve of those who had signed the agreement to take stock, including the defendants here Jos. H. Outhwaite, Jno. T. Gale, H. A. Reinhard and F. M. Senter.  It is true that in the record of this meeting it says these incorporators were twelve of the subscribers to the stock; but it is evident that the keeper of those minutes, who could certify that the meeting was held for the purpose of "indicating" the corporation of the company, etc., wrote of the *agreement* to subscribe executed before this time, as if it was the actual subscription made subsequently.

This meeting adjourned until March 31, 1883, at 10 o'clock A. M., when they were to meet for the final organization of the company. On March 30, 1883, the articles of incorporation duly executed were filed with the secretary of state, and the same day the following subscription paper was written by Judge W. J. Gilmore, and signed by defendants: "We, the undersigned subscribers, do hereby take the number of shares of stock of $100 each in The Columbus Times Company, set opposite our names, and agree to pay the same to the treasurer of said company in 10 per cent. installments, as contemplated by the statute. As between the subscribers themselves, it is understood that this subscription is made subject to the condition contained in our agreement to take stock as set forth in a former page of this book. And for the purpose of allowing a speedy organization of the company, we and each of us severally do hereby waive the thirty days notice of the opening of books of subscription, and as soon as the stock is all taken, and ten per cent. thereof paid in, we do hereby authorize any five or more of the incorporators to so certify in writing to the secretary of state: and thereupon we, and each of us separately further agree to, and do hereby waive the thirty days notice of the meeting of the stock holders for the purpose of electing seven directors of said company, to which number we agree, and we further agree that the voting may be done in person or by proxy in electing directors. The election to be held at such time and place as a majority of the incorporators may agree upon. Given under our hands, March 30, 1883."

Signed by persons including defendants for shares amounting to 210, representing $21,000.

On March 31, 1883, at the adjourned meeting, it was found that the signatures of all the subscribers had not been obtained to the final subscription and the waiver of 30 days notice of opening books for subscription, being the agreement above recited, and the meeting was adjourned until April 3, 1883, at 3 o'clock P. M., and a notice to the subscribers to the stock of the company, that an election of seven directors would be held April 3, 1883, at 3 P. M. to be signed by the incorporators, was directed to be published, and a copy sent to each subscriber.

On April 2, 1883, a certificate was filed with the secretary of state as required by the statute signed by five of the subscribers to the capital stock and incorporators, setting forth that the entire amount of the capital stock of the corporation had been subscribed and ten per cent. had been paid in.

The records show that on April 3, 1883, at 3 P. M. a meeting was held, of which M. A. Daugherty was chairman and L. M. Boda was secretary, and that after some discussion the meeting was adjourned until 8:30 P. M. of the same day. The discussion herein referred to is shown by the evidence to have arisen between John G. Thompson and certain of the stockholders, as to whether or not Thompson should permit an inventory of the property of the Times to be taken, or the stockholders should take it at his valuation. In either of the agreements were any figures placed as a valuation upon this property, save what might be inferred from the fact that Thompson & Tyler, in consideration of their transferring the property to the new company, were to have between them $9,000 of paid up stock, and that the new company was only to assume debts to the amount of $12,000. The result of this discussion was the drawing up, in the book in which the agreement to take stock and the subscriptions to stock were entered, of the following:

"On account of the misunderstanding between the subscribers to the foregoing agreement and Mr. John G. Thompson, as to the proper construction of said agreement, and in accordance with his proposition that all such subscribers may withdraw, we, the undersigned, hereby withdraw our respective subscriptions:

"(Signed): Hawley J. Wylie, $200; O. P. Chaney, $200; Jos. H. Outhwaite, $200; W. J. Clarke, $200; Jno. T. Gale, $200; Geo. Beck, $500; De Witt C. Jones, $500; H. Cashatt, $500; Geo. S. Peters, $400;—aggregating $2,900.

What was done at this time appears to have been brought to the knowledge of J. H. Collins by W. J. Clarke.

At 8:30 P. M. of the 3d of April, the adjourned meeting was called to order by the chairman, M. A. Daugherty, and John G. Thompson, Geo. H. Tyler, Jno. M. Pugh, Leslie C. Macpherson, Henry A. Reinhard and Emil Kiesewetter were elected directors, and April 4th fixed for their organization, and certain regulations adopted. The only other meeting appearing in the records of the company is one of April 12th, with president Collins in the chair, where certain resolutions were adopted which are not pertinent to our present inquiry.

The only other testimony is, that some of these stockholders paid their assessments as long as they supposed all were doing so; but finding that some were failing to pay, stopped paying, in order that one stockholder might not have any advantage of any other.

It is admitted that the corporation has no property and is insolvent; that there are valid and subsisting debts and judgments against the company; but the whole controversy is as to who shall pay them. The evidence satisfies us of the legality and regularity of the incorporation of the Times Company, and the only stockholders in regard to whose liability there can be, from the evidence, any question, are those who signed the paper drawn up at the meeting of April 3, 1883, a copy of which we have given above. And in examining the question as to whether or not they are liable, other questions which have arisen in the case, may necessarily be referred to. The plaintiffs are proceeding in the proper way to enforce this subscription, as it is their right to do, Henry v. Railroad Co., 17 O., 187, 190, and also to enforce the statutory liability.

The subscription to this stock is a contract, and it has been held that it is liable to all the incidents of a contract, as well with the corporation as between the stockholders themselves. Turnpike Co. v. Ward, 120, 13 O., 127. The right of contribution grows out of the organic relation existing between the stockholders. As between them and the creditors each stockholder is severally liable to all the creditors; as between themselves each stockholder is bound to pay in proportion to his stock. The suit of a creditor to enforce this liability is for the benefit of all the creditors; and the stockholders, whose liability is sought to be enforced, have a right to enforce from their co-stockholders contribution in proportion to their shares of stock. Umstead v. Buskirk, 17 O. S., 114, sec. 3260 Rev. Stat.

In Norris v. Wrenschall, 34 Md., 496, and in Hayes v. Cleveland, 36 M. D., 476, the stockholders' liability to creditors is held to be in the nature of a contract. The court say: "It is a debt under the statute, due from the stockholders to the creditor, springing out of and co-existent with the contract between the corporation and the creditors." It is not claimed here that any stock was actually issued to these defendants, nor was it necessary that it should have been done. Railroad v. Bank, ante, 109. The certificate of stock is not the stock, but the evidence of his being a stockholder; but he becomes such from the moment he subscribes to the stock. But these defendants claim that there was no such corporation as The Times Company, for the reason that the subscriptions to the stock were made before the incorporation. The subscription paper shows that this claim is not true. The evidence offered to prove that the subscriptions to the stock were made before the incorporation was properly rejected. If the plaintiffs had been sued by this corporation, it is very clear, under numerous decisions in this state, that having dealt with this corporation, they could not set up as a defense that it was not a corporation. And certainly there are as strong grounds for holding that where stockholders in a corporation which has held itself out and acted as such, are sued for the debts contracted by such corporation, even granting it to be only a *de facto* corporation, they cannot set up such a defense. This corporation filed proper and legal articles of incorporation with the secretary of state; it also filed a certificate that its capital stock had been all subscribed. It did business as a corporation for some

time.   Upon these things its creditors had a right to rely, Thompson on Stock., sec. 407, and however it might have been in a suit by the corporation against a stockholder upon his subscription, no authority has been found, nor indeed does it seem to us reasonable that such claim should be allowed, in a suit by a creditor against a stockholder. But as to this claim, as well as to the claim made in offering other evidence herein, that no different rule of law can apply in a suit by a creditor against a stockholder for his subscription or statutory liability than in a suit by the corporation against the stockholder for his subscription, we think counsel for defendants have failed to etablish their propositions.   Thompson on the Liability of Stockholders, sec. 142, says:   "In the cases in which it has been held that contracts to take stock in a corporation, if induced by fraud, create no obligation, the question arose wholly between the contracting parties— the company and the subscriber.   But as we advance in this inquiry, we shall see that this application of this rule has been generally denied where the company has become insolvent, and where a subscriber has been called upon to fulfil his contract for the benefit of creditors."   And again, at sec. 147:   "Though as between the company and the member, the member might have a good legal or equitable defense to a call upon himself, he may still be liable to contribute to the assets of the company for the purpose of satisfying the company's creditors."

The certificate of incorporation of a company is made for the benefit of the public, and not of the corporation.   19 L. R., 648; Thompson v. Bank, Sup. Ct. Nev., June, 1885.

"A subscription to stock was on condition that $100,000 should be secured by other subscriptions and sale of bonds, and by the false representations of officers of the company that the amount had been secured, a person subscribing was induced to receive and pay for the stock;" and yet this was held to be no defense against a creditor seeking to enforce the stockholder's liability.   Ryan v. Railway, 6 Dec. R , 1071, (s. c. 10 Am. Law Rec., 263, 272); citing 10 R. I., 112, 115; 3 Dillon, 496; 13 N. Y., 164.   .

"Where one having possession of an agreement to take shares in the capital stock of a corporation, after subscribing in good faith for shares of such stock, induces others to subscribe on the faith of his subscription and subsequently, without the knowledge of the other subscribers, alters the paper by reducing the number of shares, and delivers the instrument in that condition to the secretary, who is also a director of the company, this will not affect the liability of one thus induced to subscribe, although at the time of such delivery, the person making the alteration explains the same to the secretary, who makes no objection."   Jewett v. Railroad, 34 O. S., 602.

"A secret agreement with the directors of a corporation that a subscriber may reduce the number of shares, the subscription being held out as *bona fide* for the full amount to induce others to subscribe, is void and may be enforced for the full amount."   R. R. v. Eastman, 34 N. H., 124.   And the same doctrine is held in Cleveland Iron Co. v. Enna, decided in the Supreme Court of Indiana, Jan. 25, 1886, 4 N. E. Rep., 762, and in Thompson on the Liability of Stockholders, sec. 124.

"The fact that the note sued on was given for stock subscribed without any intention to pay it, merely for the purpose of pretending to the public that the stock was greater than it really was, or for any other purpose, is no defense to the action."   Bates v. Lewis, 3 O. S., 459.

Something has been claimed from the fact that the name of the corporation was different from that proposed in the agreement to take stock.   There are two sufficient reasons why this cannot avail.   One is that the authorities say that a mere change of name of the corporation is insufficient to discharge the subscriber.   Thompson on Liability of Stockholders, sec. 188; and the other is, that its true corporate name is set forth in the subscription to the capital stock, and it was incorporated for the purpose expressed in the agreement to subscribe.

It must be clear, then, that in order that these defendants may be released from their liability as stockholders, they must in some proper way have been divested of their liability. They claim this was done by the paper which they signed, and which I have before read as their withdrawal. This paper was drawn up and signed at a meeting held for the purpose of organization. No attempt to organize or elect any officers was made at that time. This arrangement does not purport to be made with the consent of any one, but Thompson and the subsribers thereto. They knew, for the book was before them, that all the capital stock had been subscribed. They knew that this meeting was called for the purpose of organizing the company, and that this meeting could not be held until the certificate required by law was filed with the secretary of state, in regard to the subscription for stock. The creditors of the company had a right to rely upon this registered memorandum. Thompson on the Liability of Stockholders, sec. 125. They were bound to know that by withdrawing their subscriptions they were increasing the liability of their fellow subscribers, and yet without any notice to them, or to any officer of the corporation, they claim to have released themselves from liability. This paper which they signed, was objected to by Thompson, because they had mutilated his book, and was torn out of the book, and was afterwards found not in or with the books, but among some loose papers in an old desk. While promptness in disavowing liability is essential to procure the release of a stockholder, that alone is not sufficient. "If a man subscribes for stock in a corporation in a book in his own possession, and before he returns it cuts his name out of it, he is not released from liability upon his subscription." Greer v. Chartier's R'y, 90 Pa. St., 391.

"Plaintiff, who subscribed for 600 shares in a corporation, received from defendants, who where the active ones in securing subscriptions, a collateral guaranty that they would at some future time, in case he was dissatisfied with his purchase, take the same off his hands: *Held*, that he could not recover on that contract, because each subscriber to a portion of the capital stock had a right to require that each one of his co-subscribers should be a reliable subscriber—that is an absolute subscriber not possessing any such collateral agreement without their knowledge." Meyer v. Blair, Sup. Ct. N. Y. Would it have been any different if the agreement had been to release him from liability? We think not. This contract of subscription was not with Thompson, but with the corporation, which could only act through its officers, and was also a mutual obligation among the stockholders. In the case of Hager v. Cleveland, 36 Md., 476, quoted with approval in Brown v. Hitchcock, 36 O. S., 667, 679, the court say: "The stockholder's liability is a debt under the statute, due from the stockholder to the creditor, springing out of and co-existent with the contract between the corporation and the creditor, and it is clear that no act by the stockholder without the consent of the creditor, can exonerate him from the liability thus incurred." But it is not necessary to go so far as that in this case. Suppose instead of making this arrangement with Thompson, who clearly had no right to release them, they had sought to avoid their liability by turning over their stock to a fictitious person. For all practical purposes they might as well have done that. This would not have released them; for in the case of Turnpike Co. v. Ward, 13 O., 120, the supreme court say such an assignment is void, because there was no real person to receive it. But the court go further, and making the case more closely in analogy with the one at bar, say: "Assuming this transfer to a fictitious person to be sufficient evidence of an abandonment, (which is what these defendants here claim), it still does not help the defendant, for an individual cannot release himself from the obligation of a contract against the consent of the obligee; and the defendant's subscription to the capital stock of the plaintiff is a contract."

And the law does not regard these contracts as of so litte consequence as to be thrown off at the will of a subscriber. The rights of others must be regarded as well as his.

28   C. C.   1

This doctrine is clearly recognized and followed in the case of Gaff v. Flesher, 33 O. S., 107.

In that case Gaff subscribed to stock of the company June 1, 1871; he never paid anything on his subscription, but in December, 1877, transferred his subscription to an irresponsible party. During the year 1871, the company did nothing. In January, 1872, it commenced active operations, and January 4, made an assessment of 50 per cent. January 9, 1872, Gaff notified the company that he would pay no assessments; that he had disposed of his stock subscription the previous December, and that he would not be responsible for any debts of the company.

July 1, 1872, the indebtedness sought to be enforced against Gaff was incurred, and the court held: "Subscribers to the capital stock of a corporation can not release themselves from payment, when such subscriptions are necessary for the payment of corporate debts; even although they have notified the corporation that they will not be responsible for its debts.

To say that that case differs from this is to beg the question, for unless these defendants released themselves, they were stockholders when these debts were incurred.

But if it could be claimed that Thompson represented the company, the rule is the same as appears from the case of Bedford R. R. Co v. Bowser, 48 Pa. St., 37, in which it is said:

"Thus in assumpsit, brought by a corporation against a stockholder to recover the amount due on his shares, it appeared that the board of directors had, by resolution, purchased for the company from this and other subscribers their shares, and, on behalf of the company, assumed the payment of their subscriptions; that the stock had been surrendered to the company, the subscriptions declared null and void, and released, and the secretary directed to cancel them. The court below charged the jury, that if the company had assets sufficient to pay its debts, this cancellation of stock was valid and released the defendants. 'From this,' said Strong, J., in giving the judgment of the supreme court, 'we entirely dissent.' The directors of the company, then in office, were its agents, with limited powers, the extent of which the defendant was bound to know. Their duties were to conduct its affairs to the furtherance of the ends for which the company was created. They had no power to destroy it, to give away its funds, or to deprive it of any of its means to accomplish the full purpose for which it was chartered. The creditors were not the only persons who had interests and rights at stake. The stockholders who had paid their subscriptions or bought their stock, and the common wealth, by whom the charter had been granted, were at least equally interested. * * * Directors of a corporation are trustees for all the stockholders. It is an abuse of their trust, wholly unauthorized and at war with the design of the charter, to single out some of their stock subscribers and release them from their liability. No such authority in them was ever recognized. The claim is supported neither by reason nor authority."

This is substantially the same as the decision in Slee v. Bloom, 19 Johns, 456, 476, which Thompson on the Liability of Stockholders, sec. 194, says is the leading case in New York, and which has been uniformly followed in the American decisions. So that we have not been able to find any authority which would warrant us in holding, that even a written withdrawal of subscribers to the capital stock in a corporation, entered in the subscription book, amounts to anything more than an abandonment of their subscriptions, and they cannot do that unless by consent of the corporation or the other stockholders. Indeed, it is doubtful if the authorities recognize such an act as amounting to anything, treating it as a mere nullity.

We have not referred to the cases of 13 O. S., supra, and 43 O. S., referred to by counsel for defendants, as we do not think them applicable here; the one being an action by the corporation to enforce a subscription to stock,

and the other to enforce an agreement to subscribe for stock which was not accepted.

Other considerations, which lead us the more readily to the conclusion that these defendants are still stockholders, are that not only other creditors, but the other stockholders, have rights against them, and which it would be inequitable not to enforce; it must also be borne in mind that this is not only a suit to enforce the collection of their subscriptions, but also to collect their statutory liability. In enforcing this the corporation could have no interest, for it never could have enforced it. It is a right belonging exclusively to the creditors of this corporation. Others of the defendants, who sent word that they would not act as directors, or refused to pay their installments of stock, are certainly no more released from liability than these defendants.

Some claim is made in the pleadings that the plaintiffs have no judgment against the corporation. If it is necessary that they should have reduced their claim to judgment before bringing suit they are by this issue compelled to prove that fact, and we think they have succeeded. In any event the other judgments set up herein are not denied or disputed.

The decree will be entered for the plaintiffs against all the defendants in this court and as no issues are taken upon the allegations of the petition as to the amounts of each one's stock, the finding will conform to the petition.

S. Hambleton, for plaintiffs.

J. H. Collins, for self.

L. English DeWitt C. Jones, H. J. Booth and J. C. L. Pugh for other defendants.

---

188          BASTARDY—COMPROMISE—BOND—PLEADING.

[Ross Circuit Court, May Term, 1886.]

Bradbury, J., Williams, C. J., and Clark, J.

(Chief Justice Williams taking the place of Judge Cherrington.)