## White *versus* Heylman.

The equitable transferee of a non-negotiable note takes it subject to all the
equities existing between the original parties at the time of the transfer.

If one give a promissory note to another in order to obtain possession of
his goods, which are wrongfully withheld, it is without consideration between
the parties to it.

Money paid in order to obtain possession of goods detained by the defend-
ant without colour or pretence of right, may be recovered back in an action
of *indebitatus assumpsit* for money had and received to the plaintiff's use.

ERROR to the Common Pleas of *Lycoming county.*

This was an action of *assumpsit* by John C. Heylman, for the
use of Clarissa Willard, against Allison White, on a promissory
note, of which the following is a copy:—

"Thirty days after date, I promise to pay John C. Heylman,
two hundred dollars, for value received.

"May 18th 1853.        ALLISON WHITE."

Endorsed.—"Pay to Clarissa Willard, or order.
JOHN C. HEYLMAN."

On the trial of the cause, the defendant called Charles A.
Mayer, as a witness, and offered to prove by him, that the note
sued on was without consideration. That about June 1852, he,
the defendant, employed the plaintiff to purchase for him two land
warrants, belonging to the estate of Robert Morris, for which he
paid the plaintiff $75, and the price at which he obtained the
warrants. That in pursuance of this arrangement, the warrants
were purchased of Maria Nixon, the daughter of Robert Morris,
and assigned to the defendant in June 1852. That the warrants
were located on lands in Clinton county; the survey returned in
the defendant's name, and accepted at the Land Office. That
these lands were sold by the defendant to a person residing in
Philadelphia, to whom he agreed to make a deed by a certain day.
That on going to Harrisburg, for the purpose of getting a patent,
he ascertained that patents had already been issued for the same
lands to George A. Latimer. That subsequently, defendant went
to Philadelphia for the purpose of seeing Heylman, who told him
that Latimer had no interest in the land, and exhibited a blank

[White v. Heylman.]

transfer from Latimer for the patents. That in order to obtain a transfer to him of these patents, to enable him to make title, he paid the plaintiff, Heylman, $300 in cash, and gave the note on which suit was brought. That Heylman acted as the agent in purchasing the warrants, and also obtained the title to these patents; that although issued to Latimer, they were virtually Heylman's, and that Latimer had no interest in them.

The court below (JORDAN, P. J.) overruled this offer, and rejected the evidence, on the ground that it was irrelevant, the note having been negotiated before maturity; to which the defendant excepted. And a verdict and judgment having been rendered in favour of the plaintiff for $265.13, the defendant removed the cause to this court, and here assigned the same for error.

G. White, for the plaintiff in error, cited Barnet v. Offerman, 7 Watts 130; Edgar v. Kline, 6 Barr 327.

The opinion of the court was delivered by

READ, J.—The promissory note on which this suit was brought was not negotiable, and the equitable transferee of it, for whose use this action was commenced in the name of the payee, took it, subject to all the equities existing between the original parties, at the time of the transfer. The defence set up was want of consideration, and if the facts offered to be proved by the defendant, showed this to be the case, as between the maker and the payee, then the court erred in rejecting the offer, and they cannot be sustained on any ground, the particular reason assigned by them being clearly wrong.

The offer was to prove, that the defendant employed Heylman, the plaintiff, to purchase for him two land warrants, belonging to the estate of Robert Morris, for which he paid him seventy-five dollars for his services, and the price at which he obtained the warrants, which were purchased of Maria Nixon, daughter of the decedent, and assigned by her to defendant. That the warrants were located in Clinton county, and the survey returned in defendant's name, and accepted at the land office. That these lands were sold by defendant to a person residing in Philadelphia, and he agreed to make a deed by a certain day. That when defendant went to Harrisburg for the purpose of getting a patent, he ascertained that patents had been issued for the same lands, to George A. Latimer, and when defendant went to Philadelphia to see Heylman, he told him Latimer had no interest in the land, and exhibited to him a blank transfer to him from Latimer, for the patents, and that in order to obtain a transfer to him, of these patents, to enable him to make title, he paid Heylman three hundred dollars in money, and gave the note for which this suit was brought. That Heylman acted as the agent in purchasing the

[White *v.* Heylman.]

warrants, and also obtained the title to these patents which were virtually Heylman's, Latimer having no interest in them.

If these facts had been proved, it would have been perfectly clear, that Heylman's conduct in procuring the patents was fraudulent, and that the patents were really the property of the defendant, although nominally issued to Latimer, who was simply the tool of Heylman. . The defendant was entitled to patent these lands in his own name, and if his agent interposed, and prevented his obtaining them by procuring their issue to a nominal party, from whom he held a transfer, he was bound in good faith to transfer them to his principal for whom he had acted in the purchase of the warrants, upon which these lands were located and surveyed for the defendant.

The defendant being the owner of the land had sold it, and agreed to make a deed for it by a certain day. If Heylman had not intervened, the patents would have been issued to the defendant, and he could have completed his sale. By the intervention of the plaintiff, the title of the Commonwealth appeared to be in a third person, and the defendant was thus forced, in order to procure a transfer to himself of what really was his, to pay his <u>faithful</u> agent three hundred dollars in cash, and to give the note in dispute for two hundred dollars more. Neither the payment of the cash nor the giving of the note, was voluntary, but both were extorted from the defendant, and come within that class of cases, in which money illegally claimed and paid, has been recovered back, where goods, deeds, or papers have been wrongfully detained until the money has been paid.

The old doctrine that a contract made by duress of goods cannot be avoided, has been much limited, or rather explained by later decisions, both in England and America. In Ashmole *v.* Wainwright, 2 *Queen's Bench* 937, Patteson, J., said, " I should be sorry to throw any doubt upon the point, that an action for money had and received will lie to recover money paid on the wrongful detainer of goods ; it would be very dangerous to do so, the doctrine being in itself so reasonable, and supported by so many authorities." And Coleridge, J., said, "I never doubted that an action for money had and received might be maintained to recover money paid on the wrongful detainer of goods;" and the same doctrine is recognised by Lord Denman, in Wakefield *v.* Newbon, 6 *Queen's Bench* 276.

It is true, that where there is a distress for rent, and money is paid to release the goods, then it cannot be recovered back, unless there are other circumstances besides the fact that no rent was actually due, such as wilful oppression or abuse: Colwell *v.* Peden, 3 *Watts* 327 ; Skeate *v.* Beale, 11 *Adolphus & Ellis* 983.

Where, therefore, there is neither suit, nor legal process of any kind, there can be no objection to an action to recover back money paid for the release of goods unlawfully detained, without

[White *v.* Heylman.]

any colour or pretence of right. The principle has been applied to the case of overcharge of tolls (Parker *v.* Great Western R. Co., 7 *Mann. & Granger* 253), and to the exaction of illegal tolls (Chase *v.* Dwinal, 7 *Greenleaf* 134), to an attorney withholding title deeds upon an unfounded claim of lien (6 *Queen's Bench R.* 276), and to a common carrier who had refused to deliver goods, without payment of an exorbitant remuneration (2 *Queen's Bench R.* 846).

The principle has been fully recognised in New York (Harmony *v.* Bingham, 1 *Duer* 229, and s. c. on appeal, 2 *Kernan* 99), and by the Supreme Court of the United States in Elliott *v.* Swartwout, 10 *Peters* 138, and is well stated in 2 *Greenleaf on Ev.* § 121, in a few words: "under this count," says the writer, "the plaintiff may also recover back money found to have been obtained from him by *duress, extortion, imposition,* or taking any *undue advantage* of his situation, or otherwise involuntarily and wrongfully paid, as by demand of illegal fees or claims, tolls, duties, taxes, usury and the like, where goods or the person were detained until the money has been paid."

If, therefore, such be the case, where the money has been actually paid, *a fortiori,* is such a defence available in an action upon a promissory note, extorted in the manner alleged in the offer made by the defendant, and rejected by the court. The case of Kerns *v.* Durell, 7 *Mann. Gr. & Scott* 396, closely resembles this, and although the plea was held bad by a majority of the court, for not containing a stronger negation of the right of the plaintiff to detain the goods, yet WILLIAMS, J., says, "I feel a difficulty in perceiving how the plaintiff giving up goods, which he has no right to retain, can furnish a consideration for the giving of a promissory note;" in which his brethren would have agreed, if the plea had contained an allegation that the plaintiff had no right, or colour or pretence of right, to detain the goods.

We are, therefore, of opinion that the evidence contained in the offer, as showing a want of consideration for the giving of the note, should have been admitted.

Judgment reversed, and a <em>venire de novo</em> awarded.