# Lowenstein, Appellant, v. Bache.

*Account stated—Broker—Protest against overcharge.*

1. Where a customer of a broker protests against overcharges of interest whenever accounts are rendered to him, such accounts rendered will not be presumed to have become accounts stated.

*Payment—Involuntary payment—Duress—Protest.*

2. When a party is compelled by duress of his person, deeds, papers, or personal property and the evidence of title thereto, to pay money illegally demanded, from which the party making the payment has no other means of immediate and adequate relief, it is not voluntary but compulsory; and he may rescue himself from such duress by payment of the money under protest, and afterwards, on proof of the fact, recover it back.

3. A broker agreed to make advances to a customer at five per cent interest and to hold the stocks and securities purchased as security for the loans. The broker charged more than five per cent interest, and when the customer closed his account, the broker refused to give up the securities unless the amount of the disputed interest was paid. The customer thereupon paid the broker this amount under protest and with notice that he intended to bring an action to recover it back. His statement of claim averred that the stocks and securities and the certificates which represented title thereto had been in possession of the defendants who kept the same at their office in the city of New York, and that the plaintiff did not know the certificate number, nor could he identify the stock. *Held,* (1) that the payment was under duress, and therefore involuntary; (2) that the plaintiff was not obliged to tender the amount and then bring an action of trover to recover the securities, and (3) that he could maintain an action of assumpsit to recover back the money involuntarily paid.

Submitted Oct. 12, 1909. Appeal, No. 126, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1907, No. 291, sustaining demurrer to statement of claim in suit of E. Lowenstein v. J. S. Bache et al., Copartners, trading as J. S. Bache & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover back money paid under duress.

Demurrer to statement of claim. Before McMICHAEL, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the judgment of the court sustaining demurrer to statement of claim.

*Benjamin F. Glazer*, with him *Maurice J. Speiser*, for appellant.—The maxim that the law does not compel one to do a useless thing applies to the case of tender of performance of an obligation; hence a tender is not necessary when it appears that, if made, it would have been fruitless. This point has been settled in Pennsylvania, as well as in other states, beyond dispute: Gas Company v. DeWitt, 130 Pa. 235; Appleton v. Donaldson, 3 Pa. 381; Hampton v. Speckenagle, 9 S. & R. 212; Hanna v. Phillips, 1 Grant, 253; Schayer v. Com. Loan Co., 163 Mass. 322 (39 N. E. Repr. 1110); Hoyt v. Sprague, 61 Barb. 497.

The payment of money by the owner of goods in order to redeem them from the hands of a person who unlawfully withholds them and demands such money may be treated as a compulsory payment, so that the amount is recoverable as having been obtained by oppressive means. The owner of goods may have so urgent occasion for them that the ordinary action affords very imperfect redress: Gould v. McFall, 118 Pa. 455; Thomas v. R. R. Co., 1 W. N. C. 621; Union Ins. Co. v. Allegheny, 101 Pa. 250; Harvey v. Bank, 119 Pa. 212; De la Cuesta v. Ins. Co., 136 Pa. 62; White v. Heylman, 34 Pa. 142; Motz v. Mitchell, 91 Pa. 114; Grammes v. Erney, 7 Lanc. Law Reps. 85; Joannin v. Ogilvie, 49 Minn. 564 (52 N. W. Repr. 217); Stenton v. Jerome, 54 N. Y. 480; Lehigh Coal & Navigation Co. v. Brown, 100 Pa. 338; Doolittle v. Luzerne County, 6 Kulp, 495; Steamship Co. v. Young, 89 Pa. 186.

*Samuel K. Louchheim*, for appellees.—Statements of accounts made in a pass book and acquiesced in are conclusive, unless fraud or mistake is established: Ruch v. Fricke, 28 Pa. 241; Tassey v. Church, 4 W. & S. 141; Payne v. Nicholas, 2 Phila. 220; Lodge v. Heron, 3 Phila. 356; Colket v. Ellis, 10 Phila. 375.

Where money is paid voluntarily, with knowledge of or

méans of knowing all the facts, or after neglect to take advantage of legal remedies, it cannot be recovered back on the theory of an implied promise from the payee who received it in good faith and may in equity and good conscience retain it: Morris v. Tarin, 1 Dall. 147; Natcher v. Natcher, 47 Pa. 496; Coon v. Penna. Canal Co., 3 Kulp, 488; Mattes v. Jamison, 1 North County, 280; Gould v. McFall, 118 Pa. 455; Thomas v. Phila. & Reading R. R. Co., 1 W. N. C. 621; Union Ins. Co. v. Allegheny, 101 Pa. 250; Peebles v. Pittsburg, 101 Pa. 304; Colwell v. Peden, 3 Watts, 327; Espy v. Allison, 9 Watts, 462; Carson v. McFarland, 2 Rawle, 118; Hinkle v. Eichelberger, 2 Pa. 483; Boas v. Updegrove, 5 Pa. 516; Edgar v. Shields, 1 Grant, 361; Taylor v. Board of Health, 31 Pa. 73; Union Nat. Bank v. Dersham, 15 W. N. C. 541; Harvey v. Bank, 119 Pa. 212; De la Cuesta v. Ins. Co., 136 Pa. 62; Murphy v. Cawley, 7 Kulp, 128; Sheredine v. Gaul, 2 Dall. 190; Cass v. Higenbotam, 27 Hun, 406; Holton v. Brown, 18 Vt. 224.

OPINION BY PORTER, J., March 3, 1910:

The court below entered judgment in favor of the defend- ants upon a demurrer to the statement filed by the plaintiff in this action of assumpsit. The plaintiff's statement averred that in the year 1902 he entered into an agreement with the defendants to act as his bankers, brokers and agents in the buying and selling of stocks on his behalf and in the advancing of sums of money on his behalf, in the making of such purchases, and to hold as collateral security for such loans and advances the stock of plaintiff so purchased; that at the time plaintiff so engaged the defendants to act as his brokers and agents it was orally agreed on behalf of the defendant firm that they would furnish said advances or loans at a fixed rate of five per cent interest, irrespective of the market rate of interest; and said agreement to exist and continue so long as the defendants should be permitted to act as the plaintiff's bankers, brokers and agents; that defendants continued to act as plaintiff's bankers, brokers and agents until June 21, 1907, purchasing and selling stocks and other securities from time to time and making advances upon account of such purchases,

holding the stocks and bonds as security for the advances, as set forth in detail in the exhibits attached to the statement; that at several dates specified, from December, 1905, to March, 1907, the defendants rendered to the plaintiff statements of the purchases and sales of securities made for him and the sums advanced by the defendants on account thereof and of the interest charged him for said advances; that upon certain dates these statements charged the plaintiff with interest at a rate in excess of five per cent, the amount of such excess being in each instance specifically set forth in the plaintiff's statement filed in this case, and aggregating $832.84; that plaintiff repeatedly protested to the defendants against these overcharges of interest and demanded that the same be stricken from the account, and that Walter C. Louchheim, one of the defendants, on behalf of the defendant firm promised and assured the plaintiff that the matter would be made right and the total amount of overcharge would be credited and allowed the plaintiff whenever he desired to withdraw his account; that on June 21, 1907, the plaintiff notified the defendant firm that he desired to close his account; that the defendants then had in their possession certain stocks and securities, enumerated in the statement, belonging to the plaintiff which they held as collateral security for the sums which they had advanced, which stocks and securities were kept by the defendants in their New York office and the plaintiff did not know the certificate numbers nor could he identify said stock; that plaintiff then demanded that the total amount of the interest overcharges be stricken from his account, in accordance with the agreement between him and the defendants, and offered to pay the defendants the balance justly due them, to wit: the amount which the defendants claimed less $832.84, the total amount of excessive charges for interest, and demanded the return of the stocks and certificates which the defendants held as collateral. The statement further averred that the defendant firm, through one of its members, declared that they would not accept the sum which the plaintiff offered, declined to deduct any part of the excessive interest charges, demanded the full sum of $4,209.74 and refused to deliver to plaintiff the

stocks and securities held by the defendants as collateral until the said sum was paid; that plaintiff protested that the sum of $4,209.74 was not justly due, and he informed the defendants that he would pay said sum because they refused, without such payment, to surrender the stocks and securities which they held as collateral, and that he would bring suit against them to recover the amount which he was thus compelled to overpay; and that he did on June 21, 1907, because the defendants refused to surrender to him his stock without such payment, cause to be paid to the said defendants the sum of $4,209.74 and his stock was thereupon surrendered to him.

The statement sufficiently avers the date upon which the plaintiff's cause of action rose, if upon the facts stated he is entitled to recover, and the first ground of demurrer is not well taken. The agreement as to the rate at which interest on the advances was to be charged is in the statement set forth in exact terms, the rate was to be five per centum, and the second ground of demurrer cannot be sustained. The exhibits attached to plaintiff's statement were accounts rendered, but the averment of the statement, that the plaintiff protested to the defendants against the overcharges of interest and that the defendants agreed that they would correct the same, negatives any presumption that any one of the accounts rendered ever became an account stated between the parties; and the third ground of demurrer is without foundation. The court below, as indicated by the opinion filed, did not consider the statement defective for any of the reasons above suggested, but decided against the plaintiff's right to recover upon the question raised by the last three grounds of demurrer, which squarely raise the question of the right of the plaintiff to recover the money which he paid to the defendants in order to obtain possession of his bonds and stocks and the certificates which were the evidence of title to the same. The court below held that under the facts averred in the statement the payment which the plaintiff made to the defendants in order to obtain possession of his property was a voluntary payment and could not be recovered back.

The general principle that money voluntarily paid with full

knowledge of the facts, in the absence of fraud, cannot be recovered back, is well settled. Is a payment of money made under the facts and circumstances averred in this statement a voluntary payment, in contemplation of law? In one sense it may be said to be voluntary, for there is no physical compulsion upon him who pays. The person of the plaintiff was under no duress, but his property and all evidence of title thereto was in the possession of the defendants, held by them as security for a debt. The defendants had taken that property and the evidence of title thereto into their possession as security for a debt and had contracted to redeliver it to the plaintiff upon payment of the debt, with interest at the rate of five per centum. The plaintiff offered to pay the defendants the amount due and demanded his property in their possession; defendants declared that they would not accept the sum due and demanded $832,84 more than was due and refused to deliver the property of plaintiff, unless he complied with their excessive demand; and plaintiff, in order to obtain possession of his own property, paid the amount unlawfully demanded, protesting against the same and notifying them that he would bring an action to recover it.

The only effect of a protest is to show the involuntary character of a payment procured by duress, and the intention to reclaim the money. There must be compulsion, actual, present and potential, inducing the payment by force of conditions which render the person or property subject to the control of the party demanding payment, when the party so paying may give notice of the illegality of the demand, his involuntary payment and intention to reclaim. When the element of coercion is lacking, a mere protest or notice will not change the character of the payment or confer of itself a right to recover, although it may be necessary in some cases, where the element of coercion is present, to pay under protest, that is, with notice of an intention to reclaim, in order to repel the implication of an assent: Peebles v. Pittsburg, 101 Pa. 304; Borough of Allentown v. Saeger, 20 Pa. 421; McCrickart v. Pittsburg, 88 Pa. 133; Harvey v. Girard National Bank, 119 Pa. 212; De la Cuesta v. Insurance Company, 136 Pa. 62.

That a contract may be rendered void or a payment of money become involuntary because it is constrained by duress of goods has long been well settled. To constitute the coercion which the law will recognize as sufficient to render a payment involuntary there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting payment, from which the party making the payment has no other means of immediate and adequate relief. The threat of a distress for rent, when there is no rent due, is not such duress, because the party may replevy the goods distrained, and try the question of liability at law. The threat of legal process is not such duress, for the party may plead and make proof, and show that he is not liable. But when there is neither suit nor legal process of any kind, and the goods of a party are unlawfully detained until he pays a sum illegally demanded, he may pay under protest and maintain an action to recover the money. The general rule may be thus stated: when a party is compelled by duress of his person, deeds, papers, or personal property and the evidence of title thereto, to pay money illegally demanded, from which the party making the payment has no other means of immediate and adequate relief, it is not voluntary but compulsory; and he may rescue himself from such duress by payment of the money under protest, and afterwards, on proof of the fact, recover it back: Hospital v. Philadelphia County, 24 Pa. 229; White v. Heylman, 34 Pa. 142; Motz v. Mitchell, 91 Pa. 114; Lehigh Coal & Navigation Co. v. Brown, 100 Pa. 338; Union Insurance Co. v. City of Allegheny, 101 Pa. 250; Shaw v. City of Allegheny, 115 Pa. 46; Railroad Co. v. Commissioners, 98 U. S. 541; Harmony v. Bingham, 2 Kernan, 99; Stenton v. Jerome et al., 54 N. Y. 480.

The statement averred that the stocks and securities and the certificates which represented title thereto had been in possession of the defendants, who kept the same at their office in the city of New York, and that the plaintiff did not know the certificate numbers nor could he identify the stock. It is, therefore, manifest that the plaintiff could not have maintained replevin for the stock or the certificates which were the

evidence of title thereto. The relief to which he was entitled was the immediate possession of his property upon payment of the amount for which it was pledged. He was compelled to pay to the defendants $832.84 more than they were lawfully entitled to claim from him in order to obtain possession of his property which they held as a pledge, and he had no other means of immediate, adequate relief; he paid under protest, notifying them that he would bring an action to recover it back. We are constrained by the weight of authority to hold that this was an involuntary payment and that plaintiff is entitled to recover. The case of De la Cuesta v. Insurance Co., 136 Pa. 62, is clearly distinguishable from the one with which we are now dealing; there was in that case no property of the plaintiff in the hands of the insurance company at the time he made the payment; the question was as to the rate at which he should agree to pay for stock to be issued in the future. The stock was to be issued in the future, no certificates for the stock were in existence, and the question upon which the parties differed was one of law; the price at which the law required the company to issue the new stock to the old stockholders. The opinion of Mr. Chief Justice PAXSON thus states the view which was taken of that case by the court: "The dilemma was the uncertainty of the law. There was no other pressure or duress that caused the payment. However great the uncertainity of the law may be in a particular case, it has never been supposed to amount to duress of either person or goods." It has been argued in the present case that the plaintiff after tendering the amount which he admitted to be due had a remedy in an action of trover against the defendants, and he might have recovered the value of his securities; that he was put to his election between this course and voluntarily paying the money, and that, having paid the money, he cannot recover. An action of trover would not have afforded the plaintiff the relief to which he was entitled, the immediate possession of his property; he would have been compelled to exchange his property for a right of action against these defendants. The case of Astley v. Reynolds, 2 Strange, 916, has been repeatedly referred to with approval in the opinions in

the cases hereinbefore cited. In that case the plaintiff had pawned a lot of plate as security for a loan of twenty pounds. When he offered to redeem the pledge he tendered in addition to the principal a sum more than sufficient to cover the interest to which the defendant was entitled; but the latter demanded ten pounds interest. The plaintiff finally paid the exorbitant demand of defendant, and after securing possession of his property brought suit to recover the excess over the amount to which the defendant was entitled. It was contended that the payment being made with full knowledge of all the facts, was voluntary; and that the plaintiff having made a sufficient tender might have maintained an action of trover and conversion, but the court in entering judgment in favor of the plaintiff said: "The plaintiff might have such immediate want of his goods that an action of trover would not do his business. Where the rule, volenti non fit injuria, is applied, it must be where the party had his freedom of exercising his will, which this man had not. We must take it that he paid the money, relying on his legal remedy to get it back again." The plaintiff's statement in the present case, set forth a sufficient cause of action to recover a specific sum of money, and for that amount he is entitled to judgment, upon the demurrer filed by the defendants.

The judgment is reversed and judgment is entered in favor of the plaintiff and against the defendants for $832.84, with interest on said sum from June 21, 1907, and costs.