## Wagner v. Beaver Valley Water Company, Inc.

*Practice, C. P.—Pleading—Statement of claim—Averment as to judgment —Record of judgment.*

1. Where, in an action of *assumpsit*, the statement of claim contains averments as to a judgment described by court, term and number, and it appears that plaintiff's whole case is predicated upon the existence of such judgment, the court will consider the whole record of the judgment as properly before it in determining the case upon a demurrer to the statement.

Practice Act, 1915, § 5, considered.

*Payment—Duress—Voluntary payment—Judgment.*

2. Where a defendant in a judgment desiring to be relieved of a lien upon a portion of his real estate, which he desires to convey, pays the judgment and secures thereby a release of lien, his payment is voluntary and he cannot thereafter recover the amount of it, although the judgment was subsequently stricken off as having been illegally entered.

3. In such a case, payment by defendant was not the only means available to avoid the lien, inasmuch as he might have proceeded before such payment to have the judgment stricken off.

4. In such a case, defendant has no real grounds for complaint where it appears that, although the judgment was illegally entered, he in fact was liable for the money which it represented.

5. Money voluntarily paid on a claim of right, where there has been no mistake of fact, cannot be recovered back on the ground that the party supposed he was bound in law to pay it, when in truth he was not.

Statutory demurrer. C. P. Beaver Co., March T., 1926, No. 241.

*W. S. & W. S. Moore, Jr.,* for plaintiff; *S. P. McConnell,* for defendant.

READER, P. J., Aug. 20, 1926.—The plaintiff in the above entitled case brought this action against the defendant to recover from it money paid to it under circumstances hereinafter stated. Upon the filing of the statement of claim, the defendant filed an affidavit of defence raising the question of law that the plaintiff's statement of claim fails to show a cause of action.

At the time of the institution of this action a similar action was instituted by George R. McPherson against the same defendant at No. 240, March Term, 1926. Mr. McPherson also claims to recover the sum of $300 from the defendant, paid to it under circumstances quite similar to those under which Mr. Wagner made his claim. An affidavit of defence was also filed to the statement of Mr. McPherson, raising the same question of law that is raised in the instant case. The two cases were argued at the same time, and we shall discuss in this opinion the questions involved in both.

The facts averred in the statement of Mr. Wagner are substantially as follows: The defendant company caused a judgment to be entered in the Court of Common Pleas of Beaver County, at No. 369, September Term, 1921, against Wagner, McPherson and others. This judgment was entered on Aug. 2, 1921. On or about Jan. 30, 1922, Mr. Wagner and his associate in the

partnership of Wagner & Kribbs, Mr. Charles L. Kribbs, were about to place a mortgage on a lot of land owned by them in the Borough of Beaver Falls, when it was found that the said judgment of the defendant·was a lien upon said land. It is further averred that the plaintiff requested the defendant to release said land from said judgment, which the defendant company refused to do without a payment being made on account of said judgment, whereupon said Wagner, on said Jan. 30, 1922, paid to said Beaver Valley Water Company the sum of $300 on account of said judgment and the debt secured thereby, and the said Beaver Valley Water Company entered a receipt for the $300 on the record of said judgment. A copy of this receipt, attached to the Wagner statement as Exhibit "A," is as follows:

"January 30, 1922, received of Charles W. Wagner $300.00 on account of costs filed in this case, and in consideration thereof, by virtue and in pursuance of a resolution of the Board of Directors of the Beaver Valley Water Company duly entered on its minutes, and to me directed, I do hereby release, exonerate and forever discharge the said Charles W. Wagner from all liability for said costs and satisfy said judgment as to him and as to his property.

"Witness my hand and seal.                         JOHN T. TAYLOR,    (Seal)
"Attest: Daniel D. Boyde.                                      President."

In the McPherson statement it is averred that Mr. McPherson was about to sell certain real estate to the Pittsburgh, Fort Wayne & Chicago Railway Company when it was found that it was subject to the lien of said judgment of the defendant. Mr. McPherson avers that he requested the defendant company to release said real estate from said judgment. The defendant refused to make such release without payment on account of the judgment, and on July 7, 1922, Mr. McPherson paid to the defendant the sum of $300 on account of the debt secured by said judgment, whereupon the defendant entered a receipt for said money on the record of said judgment. A copy of said receipt, attached to the McPherson statement as Exhibit "A," is as follows:

"July 7, 1922, received of George R. McPherson $300.00 on account of costs filed in this case and in consideration thereof, by virtue and in pursuance of a resolution of the Board of Directors of the Beaver Valley Water Company entered on its minutes, and to me directed, I do hereby release, exonerate and forever discharge the said George R. McPherson from all liability for said costs and satisfy the said judgment as to him and as to his property.

"Witness my hand and seal.                         JOHN T. TAYLOR,    (Seal)
"Attest: Daniel D. Boyde.                                      President."

In the statement in each action it is further averred that on Nov. 27, 1922, the Court of Common Pleas of Beaver County found that the said judgment of the defendant at No. 369, September Term, 1921, was entered without authority of law, and made an order striking off said judgment; and that on April 11, 1923, an appeal was taken to the Supreme Court from this judgment of the Court of Common Pleas of Beaver County, which appeal, however, was not prosecuted by the appellant and was discontinued on Sept. 26, 1923. It is averred that on Dec. 8, 1925, a certified copy of the order of the Supreme Court was filed of record in Beaver County. An examination of the record of said judgment at No. 369, September Term, 1921, shows that the order of the Court of Common Pleas of Beaver County striking off said judgment was not entered on Nov. 27, 1922, as set out in said statements, but on March 27, 1923. Upon the basis of the facts set out in the statements as briefly summarized herein, the said plaintiffs respectively claim that the sum of $300

paid by each to said defendant was paid to said defendant under compulsion and duress, and that each is entitled, therefore, to recover this sum from the defendant. At the argument of the cases, the question arose as to the extent to which the court, in passing upon the questions involved, can consider the record of the proceedings at No. 369, September Term, 1921. The plaintiffs contended that the affidavit of defence being a demurrer, no facts could be considered in passing upon it, except those set out in the plaintiffs' statements. They further contended that the statements do not embody the whole of the record of the proceedings at No. 369, September Term, 1921, and that only so much thereof as is actually set out in the statements can be considered by the court. It is apparent, however, that in each case the very foundation of the plaintiff's claim is, first, the payment of the sum of $300 on account of the debt secured by said judgment at No. 369, September Term, 1921, and, second, the proceedings by which the said judgment was declared to be a nullity and was stricken off. The averments of the lien of this judgment upon property of each of said plaintiffs, and of the payment by each of the sum of $300 to secure the release of his land from that lien, is predicated upon the existence of the judgment. We think the effect of the averments in the statements as to the record of this judgment is to make the whole of the record a part of the statements. Section 5 of the Practice Act of May 14, 1915, P. L. 483, which requires every pleading to have attached to it copies of all notes, contracts and book entries upon which the party pleading relies for his claim, provides that "a particular reference to the records of any court within the county in which the action is brought is a sufficient pleading of such record." We think, therefore, that the whole of said record should properly be treated as embodied in each of the statements under consideration. A consideration of the whole of said record is also necessary to a proper understanding of the foundation of the plaintiffs' claim. The judgment in this court at No. 369, September Term, 1921, was entered upon an exemplification of the record of proceedings in the Superior Court of Pennsylvania. The proceedings in that court arose from an appeal from an order of the Public Service Commission of Pennsylvania. Quite a number of individuals, some as original parties, others by intervention subsequently, were involved in the proceeding against the Beaver Valley Water Company relating to its service and rates. Among these parties were Charles W. Wagner and George R. McPherson, plaintiffs in the instant actions. An order was made in the proceeding by the Public Service Commission, from which the appeal to the Superior Court was taken. The final order of the Superior Court, as appears from the exemplification filed in this court, is as follows:

"March 17, 1921, Order of Public Service Commission reversed and record remanded with directions to dismiss the complaints, costs to be paid by intervening appellees."

As above stated, judgment was entered in this court at No. 369, September Term, 1921, upon an exemplification of this proceeding in the Superior Court. This judgment was in favor of the Beaver Valley Water Company and against the various individual parties in the proceeding, including Wagner and McPherson, and was in the amount of $3376.99, covering costs directed to be paid by the order above stated. On Nov. 16, 1921, counsel for the various defendants in said judgment for costs moved to strike off the judgment on the ground that there was no jurisdiction in the Court of Common Pleas of Beaver County to enter said judgment upon said exemplification. An opinion and order of this court by Baldwin, P. J., were filed on March 27, 1923. The judgment was stricken off. From this order an appeal was taken to the

Supreme Court, which, as above stated, was discontinued on Sept. 26, 1923. The reason assigned by Judge Baldwin in his opinion for striking off the judgment is thus stated:

"We think this motion must be granted. No costs were recoverable, either by plaintiff or defendant, at common law. They are exclusively a creature of statute. The Public Service Act of 1913 provides, in article VI, section 2, that 'The fees, expenses, and costs of, or in connection with, any hearing must be imposed by the commission upon any party to the record, or may be divided between any or all parties to the record in such proportions as the commission may determine.' "

"The act also gives the appellate court (article VI, section 24) full power to dispose of all costs in making any final decree on any appeal.

"But we find nothing in the Public Service Act, the Act of June 24, 1895 (creating the Superior Court), or any of the amendments thereto, nor any other statutory authority, for entry of the present judgment. It is perfectly manifest that this court has no jurisdiction, or authority whatever, to tax or fix the costs; they should, no doubt, be taxed in the Public Service Commission where the cause originated."

It will be observed that the power of the Public Service Commission and of the Superior Court to impose the costs of the proceeding in question upon the individual parties to that proceeding is not questioned. The basis of the action by our court is that no statutory provision exists for the entry of a judgment in this court for the collection of such costs upon exemplification of the order of the Superior Court; the remedy must be pursued elsewhere. The liability of the various individual defendants for the payment of these costs is in no way affected by the order of this court in striking off the said judgment. In the light of the matters hereinbefore stated, we come to the consideration of the question as to whether the payments made by the plaintiffs, Wagner and McPherson, were made under compulsion or duress. In support of their contention that the payments are to be regarded as so made, the plaintiffs have called to our attention certain cases, which we first consider:

In the case of Hospital v. Philadelphia County, 24 Pa. 229, an action was brought by the hospital to recover from Philadelphia County taxes paid by it upon certain real estate which had been exempted from taxation by special act of assembly. The taxes were paid by the hospital after personal property upon its premises had been levied upon under a warrant of distress for the taxes. It was held that the hospital was entitled to recover the amount of the taxes thus paid. In its opinion the Supreme Court defined the circumstances constituting payment under compulsion or duress in the following language: "A voluntary payment of money under a claim of right cannot, in general, be recovered back; but it has been held that when a party is compelled by duress of his person or goods to pay money for which he is not liable, it is not voluntary but compulsory; and he may rescue himself from such duress by payment of the money, and afterwards, on proof of the fact, recover it back: Astley v. Reynolds, 2 Str. 916; 12 Pick. 13. But the threat of a distress for rent is not such duress, because the party may replevy the goods distrained and try the question of liability at law: Knibbs v. Hale, 1 Esp. Rep. 84. The threat of legal process is not such duress, for the party may plead and make proof and show that he is not liable: Brown v. McKinnally, 1 Esp. Rep. 279. But the warrant to a collector, under a statute for the collection of taxes, is in the nature of an execution running against the person and property of the party, upon which he has no day in court, no

opportunity to plead and offer proof, and have a judicial decision of the question of his liability. Where, therefore, a party not liable to taxation is called on peremptorily to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress and not voluntarily, and maintain an action to recover it back: 17 Mass. 461; 12 Pick. 13."

In the case of Miller v. Miller, 68 Pa. 486, the court stated the rule in the following language: "The constraint which takes away free agency and destroys the power of withholding assent to a contract must be one which is imminent and without immediate means of prevention, and be such as would operate on the mind of a person of a reasonable firmness of purpose. A threat to withhold payment of a debt, or to refuse performance of a contract, or to do an injury which may at once be redressed by legal proceeding, will not amount to duress per minas."

In the case of the Travelers' Insurance Co. v. Heath, 95 Pa. 333, it appeared that the insurance company had recovered a judgment against Heath, and upon an execution issued upon said judgment, Heath had paid the money which he sought to recover. The judgment upon which the execution issued was subsequently reversed by the Supreme Court and Heath's suit against the insurance company followed. It was held that Heath was entitled to recover under the circumstances of that case. In the opinion of the Supreme Court the rule is thus stated: "The general principle undoubtedly is, that money collected or paid upon lawful process or execution cannot be recovered back, though not justly or lawfully due by the defendant in the execution to the plaintiff. Cases in which the principle is recognized are numerous, but in none of them is the reason more clearly and forcibly stated than in Federal Insurance Co. v. Robinson, 82 Pa. 357. They are cases in which the judgment on which the execution issued was never reversed or vacated. Where, as in the case before us, the judgment which supported the execution has not only been reversed, but, on a retrial, final judgment has been entered in favor of the opposite party, the principle does not apply."

In addition to these cases, our attention was called by plaintiffs to the case of Humbird v. Davis, 210 Pa. 311, and the case of Whitney v. Haskell, 216 Pa. 622. These two cases are so widely different from the instant cases in the facts presented that we think they have no application whatever and need not be discussed.

Considering the three cases previously referred to and from which quotation is made, we are of the opinion that they do not support the contention of the plaintiffs in the instant case. In the case of Hospital v. Philadelphia County the payment sought to be recovered was made under the urgency of actual levy upon the personal property of the hospital, which made the payment. As stated by the Supreme Court in that case in the language above quoted, the mere threat of legal process is not duress. In the instant cases, while the judgment in question was a lien upon the lands of the plaintiffs, it does not appear that the payment made by them was the only means available to them of avoiding this lien; in fact, the record of that judgment itself shows that there was another remedy available which proved effective when resorted to, by securing the vacating of the judgment. The plaintiffs in the instant cases, also, did not pay under the pressure of an execution or any other immediate necessity of like character. In the case of Miller v. Miller, the rule is stated in like manner, and under the facts there presented a recovery of the money paid was refused. In the case of Travelers' Insurance Co. v. Heath, as above noticed, the money was paid upon an actual execution, so

that the case presented circumstances of actual compulsion. That case is further distinguished from the instant cases by the fact that the reversal of the judgment upon which the execution was issued against Heath by the Supreme Court established the fact that Heath was not indebted at all to the insurance company. In the instant cases, the order striking off the judgment did not determine that the plaintiffs in the instant cases were not liable to the defendant for the costs for which that judgment was entered. The striking off of the judgment was simply a determination that it could not be used as a remdy for the collection of the costs; the liability for their payment remained unaffected. At the time of the payment made by each of the plaintiffs in the instant case, they were liable with others, under the decree of the Superior Court, for the payment of the costs in question. Upon making payment of $300 each on account of these costs, these plaintiffs obtained not merely the release of their lands from the lien of the judgment, but, as appears from the releases attached to and made part of their statements, they obtained a release from all liability for said costs. Should the water company, by some appropriate remedy, further pursue the collection of these costs, these plaintiffs will be protected by the releases in question. At the time of the payments made by the plaintiffs, they were undoubtedly familiar with the whole situation. They were not driven to the payments by any such compulsion or duress as is within the definition of the law. If made in error at all, the payments were made simply under a mistaken view as to the legal effect of the judgment in question. Such a mistake of law does not furnish to the plaintiffs a ground for recovery. It seems to us that the instant cases are ruled by decision of the Supreme Court in the case of Union Insurance Co. v. The City of Allegheny, 101 Pa. 250. This was an action to recover from the city taxes paid by the insurance company. Liens had been filed for these taxes upon certain property upon which the insurance company had a mortgage. The land was sold at sheriff's sale and purchased by the insurance company. The effect of the sheriff's sale under the law then applicable was to divest the tax liens. Liens, however, were subsequently filed against the land for the same taxes. Judgment was obtained upon these liens and execution issued, and the insurance company thereupon paid the taxes. It was held that it could not recover from the city the taxes thus paid. The Supreme Court thus stated the general rule of law and its application to the facts of the case:

"It is well settled as a general rule of law that money voluntarily paid on a claim of right, where there has been no mistake of fact, cannot be recovered back, on the ground that the party supposed he was bound in law to pay it when in truth he was not: Clarke v. Dutcher, 9 Cowen, 674. He shall not be permitted to allege his ignorance of the law, and it shall be considered a voluntary payment: Clarke v. Dutcher, 9 Cowen, 674. In Brisbane v. Dacres, 5 Taunt. 144, Mr. Justice Gibbs said: 'Where a man demands money of another as a matter of right, and he pays it with a full knowledge of the facts on which the demand is founded, he can never recover back the sum he has so voluntarily paid.' The same principle is ruled in Morvall v. Wright, 1 Wend. 355, and Lyon v. Richmond, 2 Johns. Ch. Rep. 51. Mr. Chief Justice Waite, in pronouncing the judgment of the court in Railroad Co. v. Commissioners, 8 Otto, 541, which was a suit to recover back taxes which the company had paid, declared it to be a rule of the common law that 'where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent an imme-

diate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary.' He evidently referred to personal property of which the owner might summarily be dispossessed.

"Then, to refer to the facts in this case, we find no allegation that the taxes were illegally laid; no averment of irregularity in making the assessment or in laying the taxes. The city had undoubted jurisdiction and power, and all the forms of the law were complied with. The only alleged wrong consists in the attempt to collect the taxes by proceedings against the land after it ceased to be liable for the payment thereof. At the time the taxes were paid, each party was fully informed of all the facts bearing on the case. The plaintiff knew them then as well as now. They were all of record, and most of them in the direct line of its title. It knew when the mortgage was executed. It knew the time when it purchased the property at sheriff's sale. The claims filed showed on their face that they were for taxes laid after the execution of the mortgage, and for years prior to the sheriff's sale. The only question about which the parties could possibly differ was one of law. That was whether, under the well-known and undisputed facts, the lien of the taxes was divested. The city proposed to test it in a regular legal form. They had been duly laid; they had never been paid to the city; the property did not sell for enough to pay them, if it had claimed and obtained the whole fund produced by the sale. They remained unsatisfied against Logan. There was nothing inequitable or unconscionable in the city's acceptance of the taxes and in retaining them.

"It is said the plaintiff had not had its day in court. True, it had not. The taxes were not laid against it nor its property. The company did not propose to attack the validity of the assessment. In several of the cases cited the party had had no day in court; no hearing or opportunity of being heard, yet he might have had it before making payment by appropriate action. Failing to avail himself of it, he waived his rights. So here, by application to the equitable powers of the court or by bill in equity, execution might have been stayed and the claim removed from the record. No immediate and urgent necessity existed for the payment of the taxes to protect the property of the plaintiffs. Its goods were not about to be seized. The execution could not take from it the possession of the land; nor could a sale, if made, have had such effect. It follows that all the facts in the case are clearly insufficient to enable the plaintiff to maintain this action, and the learned judge was correct in so holding."

The rule above stated is recognized and applied under varying states of facts in the following cases: Shaw v. City of Allegheny, 115 Pa. 46; De La Cuesta v. Insurance Co., 136 Pa. 62; Shenango Furnace Co. v. Fairfield Township, 229 Pa. 357; Investor's Realty Co. v. Harrisburg, 281 Pa. 200; Lowenstein v. Bache, 41 Pa. Superior Ct. 552.

For the reasons hereinbefore stated, we have reached the conclusion that the plaintiffs in the instant cases did not make the payment of the money which they seek to recover under compulsion or duress; that they were, in fact, liable for the payment of the money, though not upon the judgment in question; that in paying the money upon the judgment they did so under a mistake of law as to the effect of the judgment, but not as to their actual liability for the payment of the costs under the decree of the Superior Court. And in consideration of the payment they obtained a release, not merely from the lien of the judgment, but from their existing liability for the pay-

ment of the costs. Under these circumstances, the law gives them no right to recover the money thus paid.

### Order.

Now, to wit, Aug. 20, 1926, the legal position presented by the affidavit of defence is sustained, and it is ordered, adjudged and decreed that judgment be entered against the plaintiff and in favor of the defendant upon the pleadings.