[Filed December 14, 1885.]

## ELIZABETH PARMENTIER v. CLAUDE PATER.

RELINQUISHMENT OF DEBT—THREATS—UNDUE INFLUENCE.—Where by the use of threats and menaces which coerce the will of a creditor of weak mind, a debtor obtains from him the relinquishment of a debt and cancellation of the obligation, such relinquishment is not valid, whether the creditor was insane or not.

SAME—DURESS.—To constitute duress by threats, it is not necessary that they should be of such a character as are calculated to operate on a person of-

ordinary firmness, and inspire a just fear of injury. It is sufficient that they do in fact compel the person threatened to do an act which otherwise he would not have done.

Multnomah County. Defendant appeals. Affirmed.

*A. H. Tanner*, for Appellant.

*W. B. Gilbert*, for Respondent.

Thayer, J. The respondent brought an action in the Circuit Court for the county of Multnomah, against the appellant, to recover the sum of $3,000 and interest, alleged to be due upon a promissory note executed by the appellant and Louise Pater, his wife, to Louis Parmentier, in his life-time. The note was given April 2, 1883. The said Louis Parmentier died September 30, 1884, by suicide, and the respondent, who was his wife and was left his widow, was duly appointed administratrix of his estate. The respondent claimed that she was the owner of the said note, and that no part of it had been paid. The appellant claimed that the note was not given for value, but that he and the said Louis Parmentier executed, each to the other, two notes for the same amount, and that the note in suit was one of them; and that they were all voluntarily surrendered up September 25, 1884, by the mutual agreement of the parties. It appears that said note in suit was secured by a mortgage upon certain real property in Portland, executed by the appellant and wife to the said Louis Parmentier, and recorded in the office of the clerk of the county of Multnomah, and that the latter, on said twenty-fifth day of September, 1884, caused to be entered upon the margin of the record of said mortgage the following indorsement, to wit:

"Receipt of $6,000 on within notes of the within mortgage is hereby acknowledged this twenty-fifth day of September, 1884.

　　　[Signed]　　　　　　　　　　"Louis Parmentier."

The following words were also appended thereto:
. "Attest: I. N. Sanders, Clerk.

        "By F. Henshaw, Deputy."

The respondent claimed, in her reply to the answer, that said note was given for value, and that the execution of the said two notes by said Louis Parmentier to the appellant was procured by fraud, and certain threats made by the respondent to said Louis Parmentier; and that, under great fear on account of the threats, and in great distress of mind that unsettled his reason, he signed said notes, and that no consideration passed therefor; that said Louis Parmentier surrendered up the note in suit to the said appellant, and caused said entry to be made upon said mortgage record, in consequence of the threats made by the appellant to him, and while in great fear and distress of mind therefrom, and while insane. The case was tried by jury, who returned a verdict in favor of respondent for the amount of said note, and upon which the judgment appealed from was entered. The appellant claims that the court committed error at the trial in refusing to nonsuit the respondent, in excluding the testimony of the witness John Lentz, and in giving and refusing instructions to the jury. After the jury was impaneled the respondent's counsel called the respondent as a witness in her own behalf, and she gave the following testimony:

*Question.* You may state to the jury what you noted about the conduct—the mental conduct—of Louis Parmentier, your husband, along about the twenty-third or twenty-fourth of September last. *Answer.* He wasn't himself at all. He hadn't eaten or drunken a thing, not even a cup of tea, for ten days before he took his life. He was nervous. He said to me: "O, my! all we have got is gone to Pater; there is no seeing what he will do." I told him not to fear Pater; Pater couldn't hurt him.

He could n't eat; he could n't sleep; he was nervous and excited, and was n't himself at all. Both Pater and his wife had something to say in the other room, and when the store was opened, was talking to him. He came out very nervous, and Pater himself came up in the store, and said: " Before I get through with you I will send you to Salem."

Said counsel then called the appellant as a witness, and asked him whether he had ever paid any money to L. Parmentier, or anybody else, on the note in suit, which he answered in the negative. Thereupon, the respondent rested her case, and the appellant made a motion for the nonsuit referred to.

I think the court properly denied the motion for a nonsuit. The evidence submitted by the respondent was very slight as to its showing either duress upon the part of the appellant, or insanity upon the part of the said Parmentier; but it showed that the latter was evidently in a distressed state of mind, and that the former was endeavoring to coerce him in a matter that seriously affected him, and that the pressure was so great that he destroyed his own life five days thereafter. I think the jury would have been justified, under the evidence and circumstances, as the case then stood, in concluding that the surrender of the note, and indorsement of the payment upon the mortgage, were compulsory acts. Louis Parmentier was evidently a weak person, and the appellant apparently was pushing an advantage he seemed to have had over him, which, it may be inferred, resulted in the cancellation of the obligation. I do not believe that the relinquishment of a debt under such circumstances is valid, whether the party relinquishing it is insane or not. At least, a jury might properly conclude that it was enforced against the will of the party. The surrender of the note, and cancellation, in effect, of the

mortgage, in order to have been legal, must have been voluntary acts upon the part of said Parmentier. He must have assented to them as freely as a party is required to assent to any contract to make it valid. But he evidently did not so assent. He was pressed to do it under an influence as potent as could possibly be brought to bear upon a human being. The result showed it. The strain was so great upon his nervous system that he sought relief in self-destruction.

It was claimed upon the argument that, in order to constitute duress by threats, they must be of such a character as are calculated to operate on a person of ordinary firmness, and inspire a just fear of injury. This is frequently said by courts and text-writers. Bouvier, in his Law Dictionary, says it; but he immediately adds the following:

" The age, sex, state of health, temper, and disposition of the party, and other circumstances calculated to give greater or less effect to the violence or threats, must be taken into consideration."

It would be very remarkable if these circumstances could not be taken into consideration in such a case; and yet I do not see how the test that "the violence or threats must be such as are calculated to operate on a person of ordinary firmness" is consistent therewith. The doctrine of duress, as understood at common law, was also alluded to, but the duress claimed in this case to have been resorted to by the appellant was of a different character. It was neither duress of imprisonment, nor duress *per minas*. It was a restraint or fear incited by threats that an impending calamity would befall the unfortunate Parmentier unless he complied with the demands of the appellant. The threats may have been vague, and the danger remote; but they were just as effectual in the accomplishment of their purpose as a double-barrel shot-

gun would have been, if loaded and leveled at the party's head. They created all the agitation and consternation in the mind of the victim that the appellant could have desired. It resulted in an apparent absolution of the appellant from the obligation of his debt; at least, the jury might have so inferred from the evidence and circumstances. I am not able to discover any difference between wrongful means resorted to in order to compel a party to do something against his will. It is no more wicked, in my opinion, to put a person in prison, or deprive him of a limb, than to scare him to death, by any artifice or chicanery that may be employed; the inequity of the act consists in compelling a person to do what he does not want to do. Any course calculated to excite alarm, which is resorted to by one party in order to coerce another to do an act detrimental to his rights, and advantageous to the former, is unlawful; and I do not think the law should make any distinction between means that are adopted in order to secure such ends.

The only question in this case in the court below was whether Louis Parmentier surrendered the said note, and caused the said entry to be made upon the margin of said mortgage record, voluntarily, or did he do those acts against his will, in consequence of the appellant operating upon his fears, as the evidence seems to indicate? I do not think it showed him insane, nor was it necessary he should have been to enable the respondent to recover the verdict. If he were in a perturbed state of mind, and the appellant took advantage of his condition, and employed menace to compel him to cancel the debt, it would be a gross fraud, and the appellant could no more plead the relinquishment of it as a defense than if he had compelled it by the direct use of physical force. The discharge of a debt obtained under such circumstances could certainly avail a party nothing:

It must be understood, of course, that I am proceeding upon the presumption that the note and mortgage were valid obligations. I have the right to regard them as such, as that question was in issue, and the jury must, under the instruction of the court upon that point, have so found in order to find for the respondent. This view of the case obviates, I think, the effect of the alleged errors, conceding them to have been such. The instructions of the court went much further than necessary, and the tests of insanity it laid down may have been erroneous, but that could in no wise have prejudiced the appellant's defense. If it had been admitted at the trial that said Louis Parmentier was not, at the time of the pretended surrender of the note and satisfaction of the mortgage, insane, it would not have aided the defense in the least. It would not have followed that the appellant did not use illegal influence to secure the result, nor that said Louis Parmentier was not at the time laboring under great mental excitement and distress. It might be answered that the question of Louis Parmentier's insanity was in issue. There is an allegation in the reply that such was the fact, but it was unnecessary to allege it in order to overcome the defense interposed. The matter set forth in the reply was sufficient without it, and it will be noticed that it was inserted in the averments as to his mental condition apparently to intensify it. The allegations are that "while in a state of great fear on account thereof [certain threats]; and in great distress of mind that unsettled his reason," etc. Again: "That thereafter, in consequence of said threats, and distress of mind therefrom, and while *insane*, the said Louis Parmentier, deceased, surrendered up said notes," etc. It was not a reply of *non compos mentis*, and I think it evident that the pleader only employed said words, "unsettled his reason," and "insane," to give more force to the allega-

tion of fear and distress of mind. · The gist of the reply was that the surrender of the note, and indorsement of payment upon the mortgage record, had been secured by unlawful means; that they were not the voluntary acts of said Louis Parmentier; and the allusion therein to his being insane was, in my opinion, intended as a kind of makeweight. The respondent did not attempt, as I can see, to establish it by proof. Her own testimony did not include the term "insanity." It merely showed a nervousness and excited state of mind at a particular time, and it could not reasonably be inferred therefrom that his reason had been dethroned. The question was not a material issue in the case; it was only incidental to the main issue; and if the court, in giving the instructions it gave in regard to it, did commit error, it was harmless. If the respondent had relied entirely upon the fact that said deceased was insane, and had no given evidence as to threats or menaces, my view might be different; but as the case stands, I do not think the question was material.

Under this view, it is unnecessary to determine whether the refusal to allow the witness John Lentz to give his opinion as to said Louis Parmentier being sane or insane was error, or not. The reasons already given, showing the harmlessness of the instructions, apply equally to that.

It only remains, therefore, to consider the correctness of the instruction given upon the question of duress, and of the one asked to be given by the appellant's counsel upon that subject and refused by the court. The one given is as follows:

"7. If you find that the defendant, by duress or threats, compelled the said Louis Parmentier to surrender up the note, and satisfy it on the mortgage on record, and that the duress or threats, if any there were, were such as to influence, and did influence, the action

of the plaintiff's intestate, and were the moving cause of his action in surrendering up the note, then there was no valid surrender of the note or mortgage, and the plaintiff is entitled to recover."

And the one asked to be given by appellant's counsel is as follows:

" 1. Where duress is relied upon to avoid a contract, or to relieve one from the legal consequences of his act, there must be something more than the mere whim or caprice of a weak or cowardly nature; but it is such actual fear, based upon sufficient reason, as to move and intimidate a man of reasonable courage. Mere threats of criminal prosecution and indictment do not constitute duress, without threats of immediate imprisonment. Threats to prosecute upon a criminal charge, but not importing to use the process in an illegal or oppressive or unusual manner, are not duress; and it must appear to your satisfaction that the threats, if any were made, influenced the action of the plaintiff's intestate, and actually caused him to surrender up the note sued on."

The instruction given was clearly correct, assuming, as I have before indicated, that the note was a valid outstanding obligation. If the appellant was, on said twenty-fifth day of September, 1884, actually indebted to the said Louis Parmentier, in the said sum of $3,000, and he influenced him, in the manner suggested in the instruction, to surrender up the evidence of the debt, he most certainly could not claim that it had been satisfied. Such a case differs entirely from one where a party has been coerced to pay or secure a just claim. In the latter case there is another cause for paying the money or giving the security, and the law would doubtless recognize that as the moving cause, unless it clearly appeared that the party was actually compelled to do it by a well-

grounded apprehension of the loss of liberty, life, or limb. The instruction asked by appellant's counsel, and refused by the court, might be applicable to cases of that character; but it should not be applied where there is no other cause for doing the act. There, any threats, even of slight injury, will invalidate the contract. Persons of a " weak or cowardly nature " are the very ones that need protection. The courageous can usually protect themselves. Capricious and timid persons are generally the ones that are influenced by threats, and it would be great injustice to permit them to be robbed by the unscrupulous because they are so unfortunately constituted.

The important question in the case was, whether the appellant was indebted to Louis Parmentier, as testified to by the respondent. If it be true that he was so indebted, then he should have paid it, notwithstanding he had succeeded by artifice in securing a surrender of the evidence of the debt. That a person should, in such a case, be allowed to profit by his own wrong, would be a monstrous proposition

Judgment affirmed.