[Decided December 3, 1894.]

## SCHOELLHAMER *v.* ROMETSCH.

[S. C. 38 Pac. 344.]

1. FALSE REPRESENTATIONS—PLEADING.—A complaint alleging that defendant made representations concerning the land in question, which he knew to be false, for the purpose of inducing, and which did induce, the plaintiff to contract to purchase said land, to her damage, is sufficient without a direct allegation that the representations were made with an intent to deceive. While such an intent is a necessary ingredient of fraud, facts may be set forth in the pleading which make the intent to deceive a necessary implication: *Rolfes* v. *Russell*, 5 Or. 400, distinguished.

2. FALSE REPRESENTATIONS — DURESS.— Where defendant took advantage of plaintiff's impaired mental and physical condition, and persistently urged her to make a certain contract, and did finally induce her to make it against her will, there was no material error in a charge that it made no difference what means defendant employed, provided they were calculated to, and did, constrain or coerce her to make said contract, and that "duress consists in restraint, imprisonment, or intimidation, or anything which tended to restrain plaintiff from acting freely and voluntarily in the matter": *Parmentier* v. *Pater*, 13 Or. 12, cited and approved.

3. INSTRUCTIONS TO JURY—ASSIGNMENT OF ERROR.—If an instruction is ambiguous or defective in any regard counsel should request a clear and full charge on that point, and unless that is done error cannot be assigned on the instruction as given: *Kearney* v. *Snodgrass*, 12 Or. 317, approved and followed.

4. FALSE REPRESENTATIONS — BURDEN OF PROOF — RATIFICATION.— In a suit to recover a payment made under a contract induced by the false representations of defendant, the burden is on him to show that plaintiff, with full knowledge of the facts, ratified the contract.

APPEAL from Multnomah: HARTWELL HURLEY, Judge.

This is an action to recover five hundred and fifty dollars advanced by plaintiff Katie Schoellhamer to the defendant John Rometsch on a contract for the purchase of certain land, which it is alleged she was induced to enter into by coercion and fraudulent representations. The complaint, in substance, is that plaintiff, who is a native of Germany, and understands but little of the English. lan-

guage, arrived in Portland with her three children on the
fifth of May, eighteen hundred and ninety-three, and took
a room at a lodging house kept by the defendant; at the
time of her arrival, and for several days thereafter, she
was sick and suffering in both body and mind, and by rea-
son thereof incapable of exercising sound judgment, or
asserting her own will in business affairs against the rep-
resentations, wishes, importunities, and constraint of oth-
ers, and wholly ignorant of the location and value of real
estate in and about Portland, as defendant well knew; that
on the day after her arrival, while she was in said condition
at defendant's lodging-house, he knowingly and falsely
stated and represented to her that a certain tract of land
containing ten acres, of which he was the owner, was free
from all incumbrances, and was situated within eight miles
of the City of Portland by the usually traveled route, and
worth not less than fifteen hundred dollars in the market
at that time, and urged and importuned her to purchase
the same at the price of fourteen hundred and fifty dollars,
and surrender to him in part payment thereof a draft or
certificate of deposit on a certain bank for seven hundred
dollars, which she then owned and held; that plaintiff re-
fused to make such purchase or payment, and repeatedly
requested defendant to desist from his efforts to induce
her to do so on account of her sickness and inability to
attend to business matters, but defendant continued his
importunities, and also employed harsh language and other
means of intimidation and coercion toward the plaintiff, to
constrain and compel her to make said purchase and pay-
ment, whereby she was greatly annoyed, harassed, per-
plexed, confused, and rendered wholly incapable of exer-
cising her judgment or will in reference to such purchase
or payment, and defendant then and there well knew the
same. It is further alleged that said representations of
the defendant were false, and that said tract of land was

then incumbered by mortgage liens to the amount of over seven hundred dollars, and could not be reached by any practicable route from the City of Portland in a less distance than thirteen miles, and was not of the value of fifteen hundred dollars, or of any greater value than four hundred dollars, all which defendant then and there well knew; that when such contract was executed plaintiff had not seen the land, and had no other knowledge or information as to its location, condition, or value than the statements and representations of the defendant, which she relied upon and believed to be true, as defendant well knew; that on the said next day after her arrival at Portland plaintiff was wrongfully induced, constrained, and coerced, against her will, and without her consent, by said false statements, representations, harsh language, and intimidation made to and exercised toward her by defendant as aforesaid, to deliver up said draft or certificate of deposit to defendant, and to receive from him a certain pretended bond for a deed for said tract of land, conditioned for a conveyance thereof upon payment by plaintiff to him of the sum of fifteen hundred dollars, with interest on deferred payments at the rate of seven per cent. per annum, and reciting the payment of five hundred and fifty dollars, being the portion of the proceeds of said draft or certificate of deposit retained and converted by defendant to his own use; that as soon as plaintiff recovered from her sickness, and discovered the true location and condition and value of the land, and the falseness of said statements and representations of defendant, and prior to the commencement of this action, she rescinded said transaction, and every part thereof, and so notified defendant, and tendered and offered to return to him his bond for the deed, and demanded the repayment to her of the said sum of five hundred and fifty dollars and interest from May sixth, eighteen hundred and ninety-three, at the rate of eight per cent.

per annum, but defendant refused to receive said bond for a deed, or to repay plaintiff said sum of five hundred and fifty dollars with interest or any part thereof; and that by reason of the premises defendant is justly indebted to plaintiff in the sum of five hundred and fifty dollars and interest thereon from said last mentioned date at the rate of eight per cent. per annum.

A general demurrer to this complaint having been overruled, the defendant answered, denying all the allegations of the complaint, and affirmatively alleging that he was the owner in fee of the land described in the complaint, and that it was of the value of over sixteen hundred dollars; that the husband of plaintiff was her agent and as such purchased the land of his for fifteen hundred dollars, after he had examined the same and fully informed himself as to its location, condition, and value; that by the terms of the contract five hundred and fifty dollars of the purchase price was to be paid in cash, and the balance on or before two years from date; that the land is situated about nine and one half miles from Portland, on what is known as the "Cornell Road," and is well improved, cleared, and ready for use; that the certificate of deposit referred to in the complaint, was delivered to him as part payment on the purchase price of said land, and the plaintiff purchased the land well knowing all the facts and circumstances concerning it, and it was sold to her at her earnest solicitation and request.

The allegations of the answer were denied by the reply, and upon the issues thus made the cause was tried by a jury, which returned a general verdict in favor of plaintiff for the amount claimed, and, under the direction of the court, a special verdict, finding (1) that defendant employed duress toward plaintiff, consisting of persistence and undue pursuasion, but no threats; (2) that defendant made false representations to plaintiff concerning

the distance from Portland to the property in question; that it was free from incumbrances, and concerning the value of buildings and improvements, and that he knew these representations to be false, and made them with an intent to deceive the plaintiff, and that she, relying thereon in a measure, although not competent to thoroughly understand or comprehend, was induced to make the purchase. A motion for a new trial, and for a judgment notwithstanding the general verdict, being overruled, judgment was entered for plaintiff, and defendant appeals.

AFFIRMED.

Mr. Alfred F. Sears, Jr. (Messrs. McGinn, Sears & Simon on the brief), for Appellant.

Mr. James Finley Watson (Messrs. Watson, Beekman & Watson on the brief), for Respondent.

Opinion by MR. CHIEF JUSTICE BEAN.

1.   It is contended by the defendant that the complaint is insufficient to charge fraud because it does not aver in direct terms that the alleged fraudulent representations were made by defendant with an intent to deceive the plaintiff.   To support this contention, reliance is had upon the case of Rolfes v. Russell, 5 Or. 400.   This was an action for deceit to recover damages for false representations as to the character, quality, and boundaries of a certain tract of land sold by the defendant to the plaintiff.   The complaint did not allege that defendant knew the representations alleged to have been made by him to be false, and for this reason the court very properly held that a cause of action was not stated, and that the complaint was insufficient to support the verdict.   In the course of the opinion, however, it was said that "the gist of this class of actions being fraud, in order to maintain them it is

necessary to aver and prove: (1) That the representations made were false; (2) that defendants knew them to be false; (3) that they were made with an intent to defraud; and (4) that plaintiff, relying upon the representations, was induced to enter into the contract." It is upon this portion of the opinion the defendant relies for a reversal of the case at bar. When the language quoted is considered in connection with the remainder of the opinion and the question actually before the court for determination, it is apparent that it was not the intention to hold that in all cases a complaint in an action for deceit would be insufficient to sustain a verdict unless it contained an affirmative allegation of an intent to deceive. Indeed, there is a very strong implication to the contrary; for, after stating that the only allegation on the subject of false representation in the complaint before the court was that they "are and were wholly false," and that plaintiff relying thereon was induced to make the purchase, Mr. Justice PRIM says: "Thus, it will be seen that no 'scienter' is alleged in the complaint, nor is there any other fact alleged which is equivalent to such an allegation," thus implying that the complaint might be sufficient without a positive allegation of the scienter. An intent to deceive is of course a necessary ingredient of fraud, and a false representation does not at law amount to a fraud unless it is made with a fraudulent intent; but, as stated by Mr. Kerr, "there is a fraudulent intent if a man, either with the view of benefiting himself, or misleading another into a course of action which may be injurious to him, makes a representation which he knows to be false, or which he does not believe to be true": Kerr on Fraud and Mistake, § 55. Now in this case it appears from the complaint that defendant made representations concerning a material matter, which he knew to be false, for the purpose of inducing the plaintiff, and which did induce her, to enter

into a contract which proved injurious to her, and hence it must necessarily be implied, after a verdict at least, that such representations were made with an intent to deceive. In fact it is difficult to understand how an allegation that defendant made the false representations with intent to deceive the plaintiff could have made his intention any more apparent than now appears from the complaint.

2. The correctness of the instructions given by the court as to what would be sufficient duress and coercion to entitle plaintiff to recover is also questioned. A reference to the testimony is necessary to a proper understanding of this question. The plaintiff was a witness in her own behalf, and, after testifying that she arrived at Portland exhausted from her journey, and ill as a result of an accident at Seattle the second night prior to her arrival, which almost resulted in her asphyxiation, gives the following account of what occurred between her and the defendant in reference to the sale and purchase of the land in question: "My husband" (who had been in Oregon and Washington about a year before plaintiff arrived) "was on the depot in Portland, and he brought us to Mr. Rometsch's. I never seen him before. My husband told him it was his family, and he showed us a room where we got rested a little while until we got breakfast. I told him at the time I was sick and pretty near died last night, and I told Mr. Rometsch after breakfast. After we got back into the bedroom, then my husband told me Mr. Rometsch had a place to sell of ten acres, and I asked him how much he wanted, and he said fifteen hundred dollars, and I thought he might get the place cheaper. I said I don't want it now. My husband didn't have any money himself; the money what I had was mine. I had a place there of my own. My husband had forty acres there in Michigan, and sold his place before he came, and took his money along; and after his money was gone I had twenty acres, and I sold

mine, and brought my money along, seven hundred dollars. I told my husband I couldn't buy this place, I didn't have money enough. Then my husband came back in the room, and comes in together with him a man,—I found out his name was Dietz, and he caused me trouble because I didn't want this place. My husband said his name was Dietz, and he abused me over it. At night Rometsch called me into the room, and then he talked at night about the place, and he said he was going to take me out tomorrow morning to see the place. I said I didn't want to see the place, I hadn't money enough, and then I go back into the bedroom. I went again into my bedroom, and then he comes back there at night, the same night, and I said I didn't want to see him, I didn't want to buy, and in the morning I was early up, and he comes up and said they are ready to take me out to see the place. My husband goes back on me, so I was just left with the children to keep off Rometsch, and when he goes away from the room, we go to breakfast and it was then about nine o'clock. This money check I have in my breast here, and then I gave the check away to my boy and told him to keep the check for me, and he keeps it for an hour, and Rometsch keeps on, and I told him to let me alone. Then Rometsch goes and make the paper out to sell me the place for fourteen hundred and fifty dollars; I told him I couldn't buy it, but he goes and makes the paper, and says he give me a good deal. Then he went away, then I got so very nervous and I sent my two little children after him to tell Rometsch I didn't want no paper. The children found him, and told him on the street 'mother wants no paper, no writing today; she gets crazy'; and Rometsch goes and makes the paper and comes back with the paper, and I don't know when I sign the check off. The children told me I sign the check off, and he brought down ink into the

bedroom. I don't remember just what the children said, but I couldn't say no, I was so nervous. Don't remember signing the check. I don't know only what the children just told me, he make me sign the check off. That was the next morning after I got there. He said to the children he would bring a German man to explain to me, but he didn't. He said now I and the children get ready, and then he just talked so fast as he could, and nobody told me just that the team was ready a long time; and when I get out in the fresh air, and I feel better, was the first time I noticed my money was gone. I got to Portland Friday morning, seven o'clock, and he commenced this thing just as soon as we got there, the same morning. He came into my room Saturday morning about six o'clock; it was early, and talked the matter over; it was about ten o'clock that he got the money and gave us breakfast. He then started us right out. I got about half-way, took sick, and had to stop. I was sick there Sunday morning, and my two little children staid there, and they couldn't find out the reason of the matter, and the children told the people there that he took my money away, and 'she don't want him to,' and the people ask me over, and he read this paper he gave me, and said you have no deed but a bond for a deed, and you have to pay for this place. He didn't tell me there was any mortgage on the place. Went on out to the place Sunday afternoon, the people taken me along to this place. Soon after I got a little better, and then I send my son back to tell Rometsch if he don't give my money back I will sue him; it was a swindle; and then I say I do this but Rometsch don't come. My eldest daughter I sent in there and the first time he say he will bring me or pay me —he will pay fifty dollars more, so he don't lose no money and I lose no money on the place; and he don't do it, and then I sue him, and he told me 'no, you don't have to do nothing on the place, you don't have to work on the place.'"

On cross-examination, the witness testified that the defendant gave the bond for a deed to her son, and not to her, and that the first she knew of having indorsed and delivered her check to the defendant was when the children told her on the road out to the place. There was other evidence on the trial corroborating the plaintiff in important particulars.

With this evidence before it, the court instructed the jury that "it makes no difference what means were employed by defendant, provided they were calculated to, and did, have the effect upon the plaintiff, in her then condition and surroundings, known to defendant, to constrain or coerce her, against her will, to formally make said averred agreement of purchase and part payment. Said averred agreement of purchase and part payment, if so procured by defendant, would be void and not binding on the plaintiff, and if you believe this, nothing but a subsequent voluntary ratification of said averred purchase and part payment would prevent her recovering in this action." And upon the request of defendant's counsel to define duress the court did so as follows: "Duress consists in restraint or imprisonment or intimidation, or any of those. In this case it is claimed that the defendant practiced or used duress, coercion, and intimidation. The word duress standing alone means any intimidation or restraint or imprisonment; any restraint on her action, anything tending to restrain her free and voluntary act, to restrain her from acting freely and voluntarily in the matter." Under the testimony, the instructions as given were clearly correct. If the defendant, taking advantage of the impaired mental and physical condition of the plaintiff, did induce her to make a pretended contract and part with her money against her will, under the circumstances indicated by her testimony, she could, it seems to us, repudiate the contract and recover the money back, even if the evidence did fall

short of the technical definition of duress. Upon this branch of the case, the only question before the trial court was whether the plaintiff voluntarily made the contract in question, or whether the defendant, taking advantage of her helpless condition, induced her to make a pretended contract with him which she would not have made had she been left to act according to her own free will. To this question the evidence and instructions of the court were directed, and, although the court's definition of duress is not technically in accordance with the definition to be found in the books, there was no material error in such instructions: *Parmentier* v. *Pater*, 13 Or. 121, 9 Pac. 59.

3.　It is also claimed that the court erred in instructing the jury to find an express appointment by the plaintiff of her husband as her agent, and that he actually examined the land. But we do not understand that the court so instructed. So far as we can ascertain, the court did not anywhere in its charge instruct the jury as to what would constitute or be evidence sufficient to show an appointment by the plaintiff of her husband as her agent to purchase the land in question from the defendant. It did charge that it was not claimed that defendant made any fraudulent representations to the husband, and if the jury found that plaintiff had appointed him her agent, and as such agent he transacted the business, they could not find for her on that branch of the case. If the instruction was not clear as to how the agency might be shown it was because it was ambiguous or defective in fullness, and counsel should have requested an instruction on that question, and, not having done so, error cannot be assigned upon the instruction as given: *Kearney* v. *Snodgrass*, 12 Or. 317, 7 Pac. 309. The reference to the examination of the land by the husband was no doubt prompted by the allegations of the answer, and probably by some evidence on the trial. It was not, however, to the effect, as claimed, that before

the jury could find for the defendant, if they believed the husband made the contract as the agent of plaintiff, they must find that he actually examined the land before he bought it, but, as we understand it, that if he was an agent authorized to make the contract, and did so make it, they must find for the defendant, because it was not claimed or contended that he made any false or fraudulent representations to the husband which induced him to enter into the contract for and on behalf of the plaintiff.

4. The instruction that the burden of proof is on the defendant to establish any ratification of the averred agreement and part payment by the plaintiff, is, we think, certainly correct. If the plaintiff was induced to make the contract by the false and fraudulent representations of the defendant, and he claims that she afterwards, with full knowledge of the facts, ratified it, it seems clear that the burden of proof is upon him to show such ratification. Finding no error in the record, the judgment of the court below is affirmed.                                    AFFIRMED.