## Tri-State Roofing Company of Uniontown *v.* Simon, Appellant.

Argued April 22, 1958. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*William Sloan Webber,* with him *Gustav M. Berg,* for appellant.

*Edward P. Good,* with him *Howard I. Scott, Herman M. Buck, Kountz, Fry & Meyer,* and *Ray, Couldren & Buck,* for appellee.

OPINION BY ERVIN, J., June 11, 1958:

The only issue presented in this appeal is whether plaintiff's threat to breach its contract with the defendant, if defendant did not sign the release absolving it "from responsibility of delaying the contract on the subject job," constituted duress.

Plaintiff alleged in its complaint that the defendant, a general contractor, and it entered into a written contract providing that the plaintiff was to do roofing work on a specified building being erected by defendant; that plaintiff completed the work in a satisfactory manner in accordance with specifications and that there was still due under the contract the sum of $4,166.40. In his answer defendant admitted all the

allegations of the complaint but alleged by way of counterclaim that plaintiff delayed in performing the contract, thereby causing damages to defendant in the sum of $5,053.14, and that plaintiff was indebted to him in the sum of $80.00 for labor which he furnished plaintiff. Plaintiff then filed a reply admitting that it owed defendant $80.00 but denying any liability to defendant for any delay in performance. Plaintiff alleged in new matter that defendant released plaintiff from liability for the delay. A copy of the written release was attached to plaintiff's reply. Defendant then filed a counter-reply alleging as new matter that he signed the release under duress, since plaintiff told defendant that if he did not sign the release, it (plaintiff) would not perform its part of the contract. Plaintiff then filed preliminary objections in the nature of a demurrer to defendant's counter-reply and new matter. The court below entered judgment for the plaintiff for the amount of its claim, less the $80.00 which plaintiff admitted that it owed to defendant. The defendant alleged that the release was signed by him because plaintiff "presented the same to the defendant for the defendant's signature with the threat and statement that unless the defendant signed said writing, the plaintiff would do nothing about the installation of the roof as it had agreed to do nor would it do anything about carrying out its obligations to the defendant under its contract with the defendant."

In Restatement, Contracts, §493, it is stated in subsection (e) that duress may be exercised by "any other wrongful acts that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction."

A threatened breach of contract ordinarily is not in itself coercive but if failure to receive the promised

performance will result in irreparable injury to business, the threat may involve duress: Williston on Contracts, Vol. 5, §1618.

In 17A Am. Jur. 564, published in 1957, the following statement appears: "§7. Doctrine of Business or Economic Compulsion. There is no doubt that the early common-law doctrine of duress has gradually expanded and broken through its original limitations, with the result that many states have adopted the modern doctrine of 'business compulsion' or what is sometimes referred to as 'economic duress or compulsion.' This doctrine has been regarded by some of the courts as being different from duress, and in the sense that it is a relaxation of the early common-law rule this is true. Yet, broadly speaking, 'business compulsion' is a species of duress, not the common-law duress, to be sure, but duress clothed in modern dress. It seems to be established as a general rule, at least in this country, that the payment of money or the making of a contract may be under such circumstances of business necessity or compulsion as will render the same involuntary and entitle the party so coerced to recover the money paid, or excuse him from performing the contract.

" 'Business compulsion' is not established merely by proof that consent was secured by the pressure of financial circumstances. But it is said that a threat of serious financial loss is sufficient to constitute duress and ground for relief where an ordinary suit at law or equity might not be an adequate remedy.

"To constitute duress or business compulsion there must be more than a mere threat which might possibly result in injury at some future time, such as a threat of injury to credit in the indefinite future. It must be such a threat that, in conjunction with other circumstances and business necessity, the party so co-

erced fears a loss of business unless he does so enter into the contract as demanded." See also 79 A.L.R. 655-669 for further annotations on this subject.

The threat of a civil suit for a good cause of action does not constitute duress: *Harris v. Tyson*, 24 Pa. 347; *Irwin v. Weikel*, 282 Pa. 259, 264, 127 A. 612; *Psiepoira v. Long*, 338 Pa. 242, 244, 12 A. 2d 904.

Threat of distraint of tenant's goods is not sufficient to constitute duress: *Heysham v. Dettre*, 89 Pa. 506; *Molony v. Matthews*, 86 Pa. Superior Ct. 370.

In *Vines v. General Outdoor Adv. Co.*, 171 Fed. 2d 487, 490, Judge LEARNED HAND said: "Still, it is certainly the law in New York, and probably elsewhere, that, if an obligee has adequate legal remedies, the obligor's threat to repudiate the debt, unless the obligee will enter into the contract, will not 'without more' avoid it. This is also the law in Federal courts." See also *Miller v. Miller*, 68 Pa. 486, 493.

In *Hartsville Oil Mill v. United States*, 271 U.S. 43, 46 S. Ct. 389, 391, Mr. Justice STONE, speaking for the Court, said: "But a threat to break a contract does not in itself constitute duress. Before the coercive effect of the threatened action can be inferred, there must be evidence of some probable consequences of it to person or property for which the remedy afforded by the courts is inadequate." To the same effect see 17 C.J.S. §172.

The cases of *Lowenstein v. Bache*, 41 Pa. Superior Ct. 552, and *Smelo v. Girard Trust Co.*, 158 Pa. Superior Ct. 473, 45 A. 2d 264, cited by appellant, are not apposite because in those cases the money was paid under an express protest.

There is nothing in the pleadings to indicate, nor do we believe there could be, that defendant could not have secured another subcontractor to complete the unperformed part of plaintiff's contract. If defend-

ant suffered a loss, he could then have instituted suit against plaintiff for damages. The remedy at law appears to be entirely adequate to save defendant from irreparable damage. This is not a case like *Lehigh Coal and Navigation Co. v. Brown,* 100 Pa. 338, where the threats, if carried out, would have ruined the business of Brown.

Judgment affirmed.