J. Irwin Shapiro, J.
The defendants move to dismiss the amended complaint for legal insufficiency, pursuant to subdivision 4 of rule 106 of the Rules of Civil Practice.
In the nine causes of action set forth in the amended complaint, the plaintiff seeks to rescind, on the ground of alleged duress, settlement agreements which he entered into with the defendants and to set aside a surrender of three policies of accident and health insurance and to reinstate them. Provision was made in the policies for the waiver of premium benefits during total and permanent disability and plaintiff claims that the defendants did not at any time waive the payment of premiums and always collected them from the plaintiff. Included among the causes of action are three for the recovery of the amounts so paid as premiums from the commencement of the *81 alleged total and permanent disability. The plaintiff also seeks to recover $500 as medical expense reimbursement provided for in one of the policies.
Two of the policies were issued by the defendant Mutual Benefit Health and Accident Association while the third was issued by the codefendant United Benefit Life Insurance Company, alleged to be a wholly owned subsidiary of the former. Each policy provided $100 monthly benefits for life for injury or accident resulting in total disability. If total disability resulted from illness, one policy provided $100 monthly benefits for life while the other two policies paid such benefits for a period of five years. In his prayer for relief, the plaintiff tenders the consideration paid by the defendants under the. settlement agreements less any benefits that accrued to date.
The plaintiff alleges that on May 23, 1956, he met with an accident at his place of employment which caused him to become totally disabled; that on January 18,-1957, while so disabled, he suffered a heart attack which has since confined him to his home; and that he has been directed by his doctor not to return to any work and “ remains totally and permanently disabled within the meaning of the polities].” It is furthér alleged that the plaintiff received full benefits until April 17,1957; that on July 12,1957, the defendant Mutual refused payment on one policy beyond April 17, 1957, and on its second policy made payment at the reduced rate of $40 per month as for partial disability; and that the codefendant, on its policy, likewise reduced payments to $40 monthly; that between July 12 and October 16, 1957, a representative of the defendants visited the plaintiff and stated that the defendants “ would make no further payments unless plaintiff agreed to surrender ” the policies. It is then alleged that on October 16, 1957, when over $2,300 was due the plaintiff under the three policies, a representative of the defendants visited him ‘ ‘ while he was alone and in bed due to his heart condition ” and that he was then informed; that the defendants refused to make payment but would, upon surrender of the three policies, pay him $6,770.
Then follows this key allegation: ‘ ‘ That solely by reason of the economic duress practiced upon him and the coercion and other acts of the defendant[s], including the willful and deliberate breach of * * * [their] contract [s] with the plaintiff, and the physical condition .and ill health of the plaintiff at. the time defendants’] representative imposed the defendants’] demands upon him, plaintiff was unable to resist the defendants’] coercion and surrendered, the aforesaid polities] of insurance to the defendant [s’] representative, receiving drafts *82 totalling [$6,770].” It is further alleged that the plaintiff is permanently disabled and that the defendants knew this when the settlement agreements were made.
While a pleading attacked for legal insufficiency must be accorded every fair and reasonable intendment (St. Regis Tribe of Mohawk Indians v. State of New York, 5 N Y 2d 24, 36; Dyer v. Broadway Cent. Bank, 252 N. Y. 430, 432), liberality “ cannot be used as a substitute for matters of substance ” and legal conclusions ‘ ‘ utilized to supply material facts by inference within the doctrine of liberal construction.” (Didier v. Macfadden Pub., 299 N. Y. 49, 53.) •“ General allegations of wrongdoing based upon undisclosed facts do not state a cause of action.” (Gerdes v. Reynolds, 281 N. Y. 180, 183-184; Lifshutz v. Adams, 285 N. Y. 180, 185; Kalmanash v. Smith, 291 N. Y. 142, 153-154.)
Such is the case here. The plaintiff has alleged, in substance, no more than that he has suffered a total and permanent disability, that defendants refused to make payments under the policies and deliberately breached the contracts and that while he was alone and in bed due to his heart condition, he acceded to the defendants’ demand to surrender the policies for a consideration of $6,770. This, the plaintiff has characterized as “ economic duress ” and “ coercion ” practiced by the defendants. However, to allege that an agreement or settlement was made under “ duress ” or “ coercion ” is to state no more than a conclusion. (Kamenitsky v. Corcoran, 177 App. Div. 605, 607.) Generally, it is not duress to do or threaten to do what one has the legal right to do (Dunham v. Griswold, 100 N. Y. 224, 226 ; 30 East End v. World Steel Prods. Corp., 110 N. Y. S. 2d 754, 757; 17A Am. Jur., Duress and Undue Influence, § 18). Similarly, a threat to breach a contract does not, without more, constitute duress (Doyle v. Rector of Trinity Church, 133 N. Y. 372, 377; Clasen v. Doherty, 242 App. Div. 502, 503; Halperin v. Wolosoff, 282 App. Div. 876; 17A Am. Jur., Duress and Undue Influence, § 17).
Accordingly, the motion to dismiss the amended complaint is granted. However, the court is unable at this juncture to determine, with finality, that the plaintiff may not be able, upon a further amendment of his pleading, to allege sufficient facts to state a cause of action for economic duress and, therefore, he will be granted 20 days following the service of a copy of the order to be entered hereon, with notice of entry, in which to serve a second amended complaint. (Channel Master Corp. v. Aluminum Ltd. Sales, 2 A D 2d 933.)
*83 It may not be amiss to point ont some of the elements, presently lacking, which would appear essential to invoke the modem doctrine of economic duress. This doctrine is constantly being extended and expanded and bears slight resemblance to common-law duress (see, generally, Dawson, Economic Duress — An Essay in Perspective, 45 Mich. L. Rev. 253; Dawson, Duress Through Civil Litigation, 45 Mich. L. Rev. 571 ; 45 Mich. L. Rev. 679; Dalzell, Duress by Economic Pressure, 20 N. C. L. Rev. 237; 20 N. C. L. Rev. 341; Hale, Bargaining, Duress and Economic Liberty, 43 Col. L. Rev. 603; Prewett, Threat of Litigation as Duress, 6 Ark. L. Rev. 472; 5 Williston, Contracts [Rev. ed.], ch. XLVII, § 1601 et seq.-, Restatement, Contracts, ch. 16 [§§ 492-499] and New York Annotations thereon; 17 A Am. Jur., Duress and Undue Influence, §§ 1-18; Ann. 79 A. L. R. 655). As stated by Professor Dawson (45 Mich. L. Rev. 253, 289): “ The history of generalization in this field offers no great encouragement for those who seek to summarize results in any single formula.” This is peculiarly a field where each ease must stand on its own facts.
Among the factors and circumstances which seem requisite to a cause of action for economic duress are the age and mental ability of the party seeking to avoid the transaction, his financial condition, the absence of good faith and reasonable belief by the other party making the demand that he has a good defense or a good cause of action, the adequacy of the consideration passing between the parties, and the adequacy of the legal remedy afforded by the courts (see Oleet v. Pennsylvania Exch. Bank, 285 App. Div. 411, 414-415; Adrico Realty Corp. v. City of New York, 250 N. Y. 29, 33-34, 39-40; Matter of Gruen v. Carter, 173 Misc. 765, 766-767, affd. 259 App. Div. 712 and the collation of cases by Frankfurter, J., dissenting, in United States v. Bethlehem Steel Corp., 315 U. S. 289, 326-330).
The foregoing are suggestive rather than exhaustive and exclusive. However, mention may be made of a few cases touching on the problem at issue. In Doernbecher v. Mutual Life Ins. Co. (16 Wn. [2d] 64), the insurance company threatened to institute suit to cancel life insurance policies because of the insured’s ill health at the time the policies were issued. This threat induced the insured’s wife and his lawyer to persuade the insured to surrender the policies so as to keep him from finding out that he had cancer. The court refused to set aside for duress a surrender agreement that the insured and Ms wife executed not long before his death. (See comment thereon by Dawson, pp. 585-586 of 45 Mich. L. Rev. 571.)
*84 The question has been litigated — with conflicting results — whether an insured, claiming total disability, may recover premium payments made as a result of the insurer’s threat of forfeiture if the premiums were not paid where the policy contained a disability premium clause (cf. Ignatovig v. Prudential Ins. Co., 16 F. Supp. 764, with Still v. Equitable Life Assur. Soc., 165 Tenn. 224; see Dalzell, Duress by Economic Pressure, 20 N. C. L. Bev. 237, 273-274).
Submit order accordingly.