Argued February 5, reversed and remanded April 30, 1969

# CAPPS, *Appellant, v.* GEORGIA-PACIFIC CORPORATION, *Respondent.*

453 P2d 935

*Leslie M. Swanson, Jr.,* Eugene, argued the cause for appellant. With him on the briefs were Clarence Barrett, Jr., Johnson, Johnson & Harrang, Arthur C. Johnson and James W. Korth, Eugene.

*Gary K. Jensen,* Eugene, argued the cause for respondent. With him on the brief were Dwyer & Kelsay and Roy Dwyer, Eugene.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, DENECKE and LANGTRY, Justices.

LANGTRY, J. (Pro Tempore).

The plaintiff's complaint alleged that plaintiff and defendant agreed that the plaintiff would attempt to

find a lessee for industrial property owned by the defendant, that plaintiff did find a lessee with whom defendant made a 20-year lease of the property at a total rental of $3,040,000, that the defendant therefore owed plaintiff a commission of five per cent plus one half of the first month's rent, or $157,000, and that the defendant paid $5,000 to plaintiff and owed the remaining $152,000, for which judgment was demanded.

The defendant's answer consisted of a general denial and an affirmative defense based on an attached release. The instrument recites that for $5,000, acknowledged to be a full commission for all services rendered, a complete release was granted by the plaintiff.

Plaintiff's reply alleged two defenses to the release: no consideration and duress. Defendant demurred separately to each of these affirmative replies, both demurrers were sustained, and judgment for the defendant was entered on the pleadings. The demurrers should have been overruled. A demurrer to an answer or a reply opens, or searches, the record so that the sufficiency of the preceding pleadings of both parties relating to the same subject are tested. 71 CJS 536-39, Pleadings § 262; Clark, Code Pleading 524-26, § 83 (2d ed 1947). A party demurring to his opponent's pleading stakes any of his own pleadings on the same matter on the demurrer and he cannot prevail if his own pleading is defective. 71 CJS, Pleadings at page 536. See *Scott v. Hall*, 177 Or 403, 163 P2d 517 (1945). Defendant's answer was deficient in that it failed to allege that the $5,000 was paid in settlement of a claim that was either unliquidated or otherwise in dispute.

"It is necessary   *   *   *   to allege the various

particular elements of an accord and satisfaction * * * and that the prior demand was unliquidated or honestly disputed * * *."[①] 1 CJS 553, Accord and Satisfaction § 47.

The fact that defendant's answer generally denies the complaint is not sufficient to cure the lack of an allegation that the claim was in dispute or unliquidated at the time the alleged release was executed. The affirmative answer must be complete in itself.[②]

---

[①] The rules applicable to accord and satisfaction appear to be applicable to the instant situation.

"* * * An accord is a contract * * * between creditor and debtor for the settlement of the claim by some performance other than that which is due. * * * Satisfaction takes place when accord is performed * * *." Restatement, Contracts § 417, comment a. at 787-88.

"A receipt or written release * * * does not constitute an accord and satisfaction but may be evidence thereof." Hickox v. Hickox, 151 SW2d 913, 918 (Tex Civ App 1941).

The difference between compromise and settlement and accord and satisfaction is slight and the terms are often used interchangeably. McGinnis v. Rolf, 239 Mo App 54, 64, 189 SW2d 456 (1945).

Compromise usually carries the idea of a mutual yielding of opposing claims. Barbarich v. Chicago Etc. Ry. Co. et al, 92 Mont 1, 9, 9 P2d 797 (1932).

A compromise settlement performed in accordance with its terms becomes an accord and satisfaction. Fricke v. Forbes, 294 Mich 375, 379, 293 NW 686 (1940).

[②] "* * * Whether the defense of accord and satisfaction [in this case a release taken for wages due and paid to employees] would be sufficient if ultimate facts were pleaded indicating the existence of an honest dispute * * * and * * * the proper compensation therefor is a question which need not be determined. * * * It is enough * * * that * * * the defense is insufficient in the absence of such allegations." Campbell v. Mandel Auto Parts Corporation, 31 NYS2d 656 (Sup Ct 1941).

Klemp Corporation v. Thompson, 402 SW2d 257 (Tex Civ App 1966), involved a sales commission where defendant corporation claimed $1,000 paid the salesman was full settlement of the commission. The court said at page 261:

"* * * The party who asserts a liquidated claim was discharged by an accord and satisfaction has the burden of alleging and proving the existence of a bona fide dispute * * * *."

This case must be remanded to the circuit court, where the pleadings may be amended. In order to save another appeal on matters which have been fully briefed and argued in this one, we think a discussion of the sufficiency of the affirmative reply relating to duress is in order. The reply in question was as follows:

"I

"The Plaintiff, in requesting payment of the obligation due him from Defendant, which obligation is set forth in the Complaint on file herein, informed Defendant that due to Plaintiff's adverse financial condition, he was in danger of immediately losing his home by foreclosure of the existing mortgage and was in danger of immediately losing other personal property through repossession and foreclosure unless funds from Defendant were immediately made available for the purpose of paying these creditors. As a result thereof, Defendant at the time of the execution of the pretended release set forth in Defendant's Answer well knew Plaintiff's precarious financial condition and knew of the impending immediate loss of Plaintiff's property unless funds were forthcoming. At that time Defendant was informed by Plaintiff and well knew that the money due Plaintiff from Defendant was the only source of funds then and there available to Plaintiff. Under these circumstances Defendant, through its agent, Harlow Call, advised Plaintiff that though he was entitled to the sums demanded in Plaintiff's Complaint, unless he signed the purported release set forth in Defendant's Answer, Plaintiff would receive no part thereof, inasmuch as Defendant had extensive resources and powerful and brilliant attorneys who would and could prevent Plaintiff in any subsequent legal proceeding from obtaining payment of all or any portion of said sums.

"II

"Defendant, through its agents, acted without good faith, without reasonable belief that the de-

mand it was making upon Plaintiff was based upon a good defense or good cause of action, and with knowledge that Defendant had no right to the money it gained by the alleged release.

"III

"As a result of the duress imposed upon the plaintiff by Defendant and by third parties, of which Defendant had knowledge Plaintiff was deprived of the free exercise of his will; faced with the choice between the comparative evils of loss of property altogether or compliance with an unconscionable demand, and as a result, was thereby forced to release a valid claim worth $157,000.00 for the grossly inadequate sum of $5,000.00."

The Restatement, 2 Contracts 938, § 492 (1932), defines duress in the following terms:

"Duress in the Restatement of this Subject means

"(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

"(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement."

This statement of the rule reflects what the text writer calls the modern or equitable rule in 17 CJS, Contracts § 177 at page 965. The text states that a contract may be unenforceable by reason of "\* \* \* economic duress or business compulsion where undue or unjust advantage has been taken of a person's economic neces-

sity or distress to coerce him into making the agreement * * *."

In early decisions, duress was limited in its scope so that a case stated like the one at bar did not, if proven, invalidate a contract. Thus, in *Hackley v. Headley*, 45 Mich 569, 8 NW 511 (1881), where the facts were almost in point with those in the instant case, the court held that simply because the plaintiff was in dire financial circumstances, which defendant knew and took advantage of, there was no ground for a successful claim of duress. The holding in *Hackley* is typical of other opinions, some old and some recent, which have held that the economic necessity of the claimant, coupled with the debtor's refusal to pay unless forced by law to do so, which together make it possible for the debtor to coerce an advantageous agreement from the claimant, are no basis for avoiding the agreement on a duress defense. See cases cited for the text in 17 CJS 966, 967, Contracts § 177. The decisions are often conflicting in similar fact situations, as Professor John P. Dawson pointed out in *Economic Duress—An Essay in Perspective*, 45 Mich L Rev 253 (1947). He said at page 289:

> "* * * The direct conflict in decisions, on facts substantially identical, makes it likewise impossible to formulate any general proposition that could now achieve anything like universal acceptance. Nevertheless, it seems clear that many decisions have already shifted a considerable distance beyond the limits defined by conventional statements of doctrine and that further shifts are to be expected. The most that can be claimed is that change has been broadly toward acceptance of a general conclusion—that in the absence of specific countervailing factors of policy or administrative feasibility, restitution is required of any excessive gain that results, in a bargain transaction, from im-

paired bargaining power, whether the impairment consists of economic necessity, mental or physical disability, or a wide disparity in knowledge or experience."

Among many cases decided since Professor Dawson's article was published in 1947 are the following:

*Ross Systems v. Linden Dari-Delite, Inc.*, 35 NJ 329, 335, 173 A2d 258 (1961):

"* * * Payments are made under duress when they are induced by the wrongful pressure of the payee and the payor has no immediate and adequate remedy in the courts to resist them * * *." (Citing cases, Annotations in 75 ALR 658 (1931); 79 ALR 655 (1932), and *Economic Duress—An Essay in Perspective,* supra.)

"* * * [T]he phrase 'immediate and adequate remedy' as it is used in the duress doctrine * * * is to be tested by a practical standard which takes into consideration the exigencies of the situation in which the alleged victim finds himself * * * [citing cases]." 35 NJ at 336.

*Joyce v. Year Investments, Inc.*, 45 Ill App2d 310, 314, 196 NE2d 24 (1964):

" '[T]he real and ultimate fact to be determined in every case is whether or not the party really had a choice—whether he had his freedom of exercising his will.' 5 Williston, Contracts (Rev. Ed. 1937) § 1603. The legal conception of economic or compulsory duress is in forcing a person to act against his own will. It does not exist when the person upon whom it has been so charged had an option or choice as to whether he will do the thing or perform the act said to have been done under duress * * *."

The court held that under the facts of that case, where the plaintiff had disputed and negotiated with defendant for 18 months before signing the questioned re-

lease that plaintiff had had adequate opportunity to protect himself in an equity court proceeding if he had wanted to do so as an alternative to executing the release.

*Manno v. Mutual Ben. Health & Accident Assoc.,* 187 NYS2d 709, 713 (Sup Ct 1959):

"It may not be amiss to point out some of the elements, presently lacking, which would appear essential to invoke the modern doctrine of economic duress. This doctrine is constantly being extended and expanded and bears slight resemblance to common-law duress (see, generally, Dawson, Economic Duress—An Essay in Perspective, 45 Mich. L. Rev. 253; Dawson, Duress Through Civil Litigation, 45 Mich. L. Rev. 571; Id. 679; Dalzell, Duress by Economic Pressure, 20 N.C.L. Rev. 237; Id. 341; Hale, Bargaining, Duress and Economic Liberty, 43 Col. L. Rev. 603; Prewett, Threat of Litigation as Duress, 6 Ark. L. Rev. 472; 5 Williston, Contracts [Rev. Ed.], ch. XLVII; Restatement, Contracts, ch. 16, and New York Annotations thereon; 17A Am. Jur., Duress and Undue Influence, secs. 1-18; Annotation, 79 A.L.R. 655). As stated by Professor Dawson (45 Mich. L. Rev., at 289): 'The history of generalization in this field offers no great encouragement for those who seek to summarize results in any single formula.' *This is peculiarly a field where each case must stand on its own facts.*

"*Among the factors and circumstances which seem requisite to a cause of action for economic duress are the age and mental ability of the party seeking to avoid the transaction, his financial condition, the absence of good faith and reasonable belief by the other party making the demand that he has a good defense or a good cause of action, the adequacy of the consideration passing between the parties, and the adequacy of the legal remedy afforded by the courts* [citing cases]." (Emphasis supplied.)

See also *Parmentier v. Pater,* 13 Or 121, 9 P 59 (1885);
*Schoellhamer v. Rometsch,* 26 Or 394, 38 P 344 (1894);
*Mendelson v. Blatz Brewing Co.,* 9 Wis2d 487, 101
NW2d 805 (1960); and *Tri-State Roofing Co. of U.
v. Simon,* 187 Pa Super 17, 142 A2d 333 (1958).

In *Leeper v. Beltrami,* 53 Cal2d 195, 1 Cal Rptr
12, 347 P2d 12, 77 ALR2d 803 (1959), the court held
that if the plaintiff had a "reasonable alternative" to
that of acceding to defendant's demand that she pay
a false claim, and plaintiff did not avail herself of the
alternative, the defendant's action which coerced her
into payment is not duress. *Leeper* is not in point
with the case at bar on its fact, but the court clearly
held that in cases where economic duress is claimed,
it is a question of fact whether the plaintiff acted as a
reasonably prudent person in choosing the alternative
which was chosen. See also *Inman v. Clyde Hall Drill-
ing Company,* 369 P2d 498, 500, 4 ALR3d 430 (Alaska
1962).

We have reviewed recent writings and opin-
ions at some length in this opinion. From this review,
we conclude that the better rule is one which allows
the statement of a duress cause or defense such as
plaintiff has pleaded here to be tried on its facts.
Thus, the quoted allegations from the plaintiff's reply
state a defense.

Reversed and remanded for further proceedings
consistent with this opinion.

DENECKE, J., specially concurring.

I concur in the decision that the judgment for the
defendant must be reversed; however, I cannot concur
in the reasoning of the majority.

The first ground for reversal is that the defend-
ant's answer setting up a release is insufficient be-

cause it failed to allege that the claim was unliquidated or otherwise in dispute. The majority refers to this release as an accord and satisfaction, whereas the instrument is in terms of a release. There is a theoretical difference between a release and an accord-satisfaction; however, both are forms of contract, and probably it is immaterial whether the agreement is an accord and satisfaction or a release.

I can see nothing to be served by requiring the pleader setting up an accord and satisfaction or a release to further allege that the claim released or satisfied was an unliquidated or disputed claim. The only materiality of such an allegation is that a release or agreement of accord and satisfaction of a liquidated and undisputed claim for an amount less than the full amount of the claim is not binding. It is not binding because there is no consideration. This court has adopted the accepted rule of pleading that the defense of want of consideration is new matter which must be pleaded. *Tuthill v. Stoehr*, 163 Or 461, 469, 98 P2d 8 (1940). Observance of this rule requires the other party to allege that the claim was liquidated and not disputed and, therefore, there was a want of consideration, and the release is not binding. This is what the plaintiff did in this case in his reply. I can see no reason to require the defendant to allege that the claim was unliquidated and disputed.

I concur that the demurrer to plaintiff's affirmative reply of no consideration was improperly sustained, and the judgment on the pleadings was, therefore, in error. In my opinion the reply alleges a liquidated and undisputed claim of $157,000 and the defense of want of consideration is adequately pleaded.

I disagree with that part of the majority holding

that the plaintiff's affirmative reply of duress states a cause for rescission.

I interpret the plaintiff's reply as alleging as follows: Plaintiff was in such economic distress that he was in danger of losing his home and other personal property unless funds owed him by the defendant were immediately paid; plaintiff informed defendant of his condition; defendant acknowledged to plaintiff that it owed him $157,000 but advised plaintiff that unless he signed a complete release in consideration of receiving $5,000 the defendant would pay him nothing; and defendant further informed the plaintiff that defendant's lawyers were so brilliant that they could prevent plaintiff from getting a judgment against defendant.

I view the basic ingredients of the allegations to be that plaintiff is in serious economic distress, which is known to defendant, and because of this defendant offers and plaintiff accepts less than the defendant legally owes plaintiff.

This seems to be as strong a case for the operation of the doctrine of economic duress as can be made. Nevertheless, I believe it would be judicially unwise to hold that these allegations constitute economic duress and that proof of such allegations would enable the plaintiff to rescind the release.

I am of this opinion because I believe that a substantial number of business transactions today have these same basic ingredients. I am also of the opinion that a majority of businessmen, while not approving such conduct, do not believe that such conduct should enable one to avoid an otherwise binding legal obligation. This belief is probably partially grounded upon the knowledge that the facts will seldom be as unambiguous as they are here alleged and the party assert-

ing this defense will usually be an unfortunate and unsuccessful party opposing a fortunate and successful party. This could cause the trier of fact to find the facts to fit the result. The attitude of the business community is a consideration, although not a compelling one. In addition, I believe that other kinds of sanctions and grounds for relief are available and more desirable.[①] The well recognized doctrine that an agreement to release a debtor in consideration for a payment of a sum less than the acknowledged amount owing is not enforceable because of a lack of consideration affords relief in situations such as plaintiff has alleged.

I agree with the majority that the decisions of other jurisdictions are in conflict on this issue. I am of the opinion that the doctrine of economic duress is more supported by dicta in the opinions than in the decisions themselves. For example, see *Hellenic Lines, Ltd. v. Louis Dreyfus Corporation,* 372 F2d 753 (2d Cir 1967).

An example of a decision which refused to apply the doctrine of economic duress is *Weinman Pump Manufacturing Co. v. Cline,* 116 Ohio App 4, 183 NE2d 465 (1961), noted in 12 DePaul L Rev 351 (1963). In that case the plaintiff's manufacturing plant was being appropriated for a freeway and it was imperative that he quickly relocate. Plaintiff owned some other property upon which he wished to relocate. Defend-

---

[①] For example, some years ago in Oregon it was believed that some insurance carriers were not paying small claims admittedly owing because they knew it would be almost as costly for the claimant to enforce their claims in court as it would be to personally absorb the claim. The legislature attempted to remedy this and provided that in certain claims less than $1,000, the claimant could make a demand, if the demand was refused and the claimant filed an action and prevailed, he would be awarded attorney's fees against the defendant. **ORS 20.080.**

ant owned a parcel contiguous to plaintiff's property and it was desirable for plaintiff to acquire this parcel to make the relocation feasible. The parties entered into a contract for the sale of the parcel for $8,000. The defendant could not give clear title, plaintiff commenced a specific performance suit, defendant then disclosed that he was married and he would not get a release of his wife's dower interest unless plaintiff paid him an additional $7,000. Plaintiff paid the additional sum because he urgently needed the land and then commenced a suit to recover the $7,000. The court held for the defendant on the ground that the evidence of business duress did not prove a cause for relief.[2]

---

[2] Unfortunately, the opinion does not contain any persuasive reasons for the result.